Filed 3/27/17

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S225193 |
| v. | ) | |
| | ) | Ct.App. 4/2 E060758 |
| RON DOUGLAS PATTERSON, | ) | |
| | ) | Riverside County |
| Defendant and Appellant. | ) | Super. Ct. No. EE220540 |
| _____ | ) | |

After pleading guilty to a drug possession charge, Ron Douglas Patterson, a Canadian citizen who has lived in the United States since his admission to this country in 1996, learned that the plea rendered him subject to mandatory deportation. Patterson filed a timely motion to withdraw the plea under Penal Code section 1018 on grounds of mistake or ignorance. The trial court denied the motion, concluding it was legally insufficient because Patterson had received the standard statutory advisement that a criminal conviction "may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." (Pen. Code, § 1016.5, subd. (a).) The Court of Appeal affirmed.

In *People v. Superior Court (Giron)* (1974) 11 Cal.3d 793, 798 (*Giron*), this court held that a defendant's ignorance that a guilty plea will render him deportable may constitute good cause to withdraw the plea under Penal Code section 1018. The question now before us is whether receipt of the standard

1

statutory advisement that a criminal conviction "may" have adverse immigration consequences (Pen. Code, § 1016.5), bars a noncitizen defendant from seeking to withdraw a guilty plea on that basis. We conclude that the section 1016.5 advisement creates no such bar. We therefore reverse the judgment of the Court of Appeal and remand to permit the trial court to determine whether, after considering all relevant factors, Patterson has shown good cause for withdrawing his plea.

## I.

Patterson was charged in a nine-count complaint with evading a police officer (Veh. Code, § 2800.2); with sale or transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a)) and cocaine (*id.*, § 11352, subd. (a)); and with possession of cocaine (*id.*, § 11350, subd. (a)), morphine (*ibid.*), MDMA[1] (Health & Saf. Code, § 11377, subd. (a)), methamphetamine (*ibid.*), and PCP (*ibid.*). At a preliminary hearing on March 13, 2013, Patterson entered a negotiated plea of guilty to evading a peace officer and possession of MDMA, both felonies; on the prosecution's motion, the remaining counts were dismissed in the interests of justice. Patterson waived referral to probation and requested immediate sentencing. The trial court suspended imposition of sentence and placed Patterson on three years' formal probation, on conditions that included 180 days in custody (with credit for three days served), to be served in the work release program.

Before entering his guilty plea, Patterson initialed and signed a plea form that stated, in accordance with Penal Code section 1016.5: "If I am not a citizen of the United States, I understand that this conviction may have the consequences of

---

[1] Methylenedioxymethamphetamine, colloquially known as "ecstasy."

deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."[2]  He also stated in court that he had reviewed the plea form with his attorney and had no questions.  When asked by the court whether he understood "everything" on the plea form, Patterson replied that he did.

Six months later, on September 13, 2013, Patterson, now represented by new counsel, filed a motion to withdraw his guilty plea pursuant to Penal Code section 1018 (section 1018).  That provision authorizes a court, "for a good cause shown," to permit a guilty plea to be withdrawn "at any time before judgment or within six months after an order granting probation is made if entry of judgment is suspended."  In his declaration in support of this motion, Patterson explained that he is a Canadian citizen and registered nurse who has lived and worked in the United States since 1996 on "a variety of non-immigrant visas.".  He sought to withdraw the plea because he had since learned the plea would render him subject to mandatory deportation from the United States.

Patterson described the circumstances that led him to enter the plea as follows:  At the preliminary hearing, the prosecution had made a "take-it-or-leave-it offer."  Patterson's defense counsel told him that she did not know what immigration consequences the plea would have, and she and Patterson tried to get in touch with Patterson's immigration lawyer, with whom Patterson had apparently never discussed his criminal case.  When they were unsuccessful, Patterson's criminal defense attorney recommended that he take the offer, and

---

[2]      We use the terms "deportation" and "removal" interchangeably.  (See *Calcano-Martinez v. I.N.S.* (2001) 533 U.S. 348, 350, fn. 1 [noting that, as part of 1996 amendments to the immigration statute, references to "deportation" in the Immigration and Nationality Act were replaced with the term "removal"].)

Patterson "followed her advice." Had he known that the convictions would result in his deportation, Patterson said, he "would have followed through with [his] plan to take the case to trial."

Patterson also supported his motion with a declaration by Stacy Tolchin, an attorney specializing in immigration law. The specialist summarized the immigration consequences of Patterson's guilty plea to a violation of Health and Safety Code section 11377, subdivision (a) as follows: "Mr. Patterson is subject to arrest at any time on deportation charges, the Immigration Judge has no authority to release him from mandatory ICE [Immigration and Customs Enforcement] detention on bond or otherwise, and he is barred from obtaining the Lawful Permanent Resident status for which he is otherwise qualified." She stated that if Patterson had consulted her before entering his plea, she would have recommended that he "absolutely not enter this disposition" and instead "attempt to enter a plea to a different disposition, that would be immigration neutral, yet give the court and prosecution equivalent convictions and sentences."[3] She noted that Patterson has no prior arrests or convictions. The immigration specialist further stated that, if the prosecution had been unwilling to agree to a negotiated guilty plea to an immigration-neutral disposition, she would have recommended that Patterson take his case to trial.

To demonstrate that Patterson had a triable case, the motion explained that all of the drug charges were based on substances found in an opaque closed container in Patterson's car, which, according to the motion, had been left there by

---

[3]     As an example of one such possible disposition that was supported by the facts of Patterson's case, the immigration specialist suggested "a plea to felony accessory after the fact to possession of an unspecified controlled substance, in violation of Penal Code § 32, and Health and Safety Code § 11377(a), with the same sentence to probation on condition of serving 180 days in custody . . . ."

4

a passenger a day and a half before Patterson's arrest. An unnamed witness had seen this person getting into the car with the container. The motion noted that a test of Patterson's blood at the time of his arrest was negative for drugs and alcohol. In his declaration, Patterson denied any clear recollection of the incident and denied that he knowingly possessed the drugs, explaining that the container in which they were found had been left in his car by a real estate broker. He attributed his erratic driving to an acute attack of hypoglycemia, a condition he has experienced on previous occasions.

Finally, as evidence that Patterson was unaware of the specific immigration consequences of a guilty plea to possession of MDMA, Patterson submitted a letter his defense counsel wrote to the prosecutor. The letter, dated the day before Patterson entered his plea, described Patterson as a Canadian citizen and registered nurse who had been lawfully present in the United States on employment-based visas for many years, and who had strong professional and personal ties in the country. Counsel stated her belief that Patterson had viable defenses to all the charges against him, but she nevertheless proposed that he plead guilty to two felony violations of Health and Safety Code section 11377, for which he would be placed in a drug diversion program (Pen. Code, § 1000), and a misdemeanor violation of Vehicle Code section 2800.2, for which he would be placed on probation with conditions including service of 270 days in jail.

The trial court denied Patterson's motion to withdraw his guilty plea on the ground that he had been advised, as required by Penal Code section 1016.5 (section 1016.5), that the conviction "may" have serious immigration consequences. The trial court stated that "[t]he question is what level of advisement is necessary for any of the items in the felony plea form to stand up," and that "the Legislature . . . passed 1016.5 so that there would be a specific language that had to be given to each person." Although the court acknowledged

5

that the federal immigration consequences of Patterson's plea "are disastrous," the court concluded that even if everything Patterson said in his papers was true, his motion was "legally insufficient" to permit Patterson to withdraw his plea. According to the court, "the defendant's subjective level of understanding" of the immigration consequences of his plea was not "truly relevant because anybody can come in and say, oh, I didn't really understand."

Patterson appealed, challenging the trial court's denial of his motion to withdraw his guilty plea. While the appeal was pending, he filed a habeas corpus petition in the superior court. In his petition, Patterson alleged that trial counsel's failure to advise him that his conviction for possession of MDMA would result in his automatic deportation, as well as her failure to attempt to negotiate an immigration-neutral disposition, violated his right to the effective assistance of counsel under the Sixth Amendment to the United States Constitution. He further alleged that he would not have entered the plea had he received accurate advice about its adverse immigration consequences. The petition was assigned to a different trial judge from the judge who had accepted Patterson's guilty plea and denied his motion to set aside the plea. Less than a week after the habeas corpus petition was filed, the judge denied it without issuing an order to show cause or conducting an evidentiary hearing, concluding that Patterson had not demonstrated a reasonable probability that he would have obtained a more favorable outcome in the absence of counsel's alleged deficiencies.

Patterson then filed a new habeas corpus petition in the Court of Appeal raising the same claims as his petition in the superior court. Although the petition did not include a declaration from trial counsel describing the events resulting in Patterson's guilty plea, Patterson attached a declaration from Attorney Norton Tooby, a criminal law specialist who has taught seminars for attorneys regarding the immigration consequences of criminal cases. Tooby's declaration states that

6

he spoke to Patterson's trial counsel, who was willing to answer Tooby's questions but was unwilling to sign a declaration, explaining that "she would prefer to be subpoenaed to testify, so the court could resolve any objection based on attorney-client privilege before she revealed confidential attorney-client information to the court and prosecution." According to Tooby, trial counsel said that she did no "investigation or research into the actual (as opposed to potential) immigration consequences" of the charges and, "[i]nstead of advising him on the actual immigration consequences of the specific plea, she advised him to seek immigration counsel." In Tooby's view, counsel's performance denied Patterson his right to the effective assistance of counsel.

The Court of Appeal consolidated Patterson's appeal and his habeas corpus petition. On Patterson's appeal from denial of the motion to withdraw his guilty plea, the Court of Appeal affirmed the trial court's judgment. The court concluded that the section 1016.5 advisement sufficiently informed Patterson of the immigration consequences of his conviction, even though he "was not clear what those consequences may be." The Court of Appeal denied Patterson's habeas corpus petition without issuing an order to show cause or conducting an evidentiary hearing. The court first concluded that trial counsel was not ineffective. The court reasoned that a criminal defense attorney's responsibility is to advise the defendant "that serious immigration consequences could result from the conviction," and that Patterson had been so advised, as evidenced by his having initialed a box on his felony plea form acknowledging that his conviction " 'may have the consequence[] of deportation.' " The Court of Appeal further concluded that Patterson was not, in any event, prejudiced by his counsel's alleged deficiency. The court acknowledged Patterson's assertion that he would not have pleaded guilty had he been aware that the plea would render him deportable, but noted that such self-serving allegations are not sufficient to show prejudice. On

7

the other hand, the court noted, Patterson had not alleged that trial counsel inaccurately conveyed the plea offer to him, Patterson was facing a maximum of 10 years in prison if he was convicted, and a conviction would nevertheless have rendered him deportable.

Patterson filed a petition for review challenging the Court of Appeal's affirmance of his convictions and its denial of his habeas corpus petition. We granted the petition with respect to the appeal. As to his attack on the denial of his habeas corpus petition, we ordered the petition for review (to which the exhibits from his habeas corpus petition in the Court of Appeal were attached) refiled as an original habeas corpus petition, and we issued an order directing the Chief Probation Officer of the Riverside County Probation Department to show cause why the relief prayed for should not be granted. The Attorney General has filed a return to the order to show cause on behalf of the probation officer, and Patterson has filed a traverse.

## II.

## A.

At any time before judgment, or within six months after an order granting probation if entry of judgment is suspended, a trial court may permit a defendant to withdraw a guilty plea for "good cause shown." (§ 1018.) "Mistake, ignorance or any other factor overcoming the exercise of free judgment is good cause for withdrawal of a guilty plea" under section 1018 (*People v. Cruz* (1974) 12 Cal.3d 562, 566 (*Cruz*)), and section 1018 states that its provisions "shall be liberally construed . . . to promote justice." A defendant seeking to withdraw a guilty plea on grounds of mistake or ignorance must present clear and convincing evidence in support of the claim. (*Cruz*, at p. 566.) A trial court's decision whether to permit a defendant to withdraw a guilty plea under section 1018 is reviewed for abuse of discretion. (*In re Brown* (1973) 9 Cal.3d 679, 685.) "[W]hen a trial court's

8

decision rests on an error of law, that decision is an abuse of discretion." (*People v. Superior Court (Humberto S.)* (2008) 43 Cal.4th 737, 746.)

In *Giron*, this court held that a defendant may establish good cause to withdraw a guilty plea under section 1018 by showing that he or she was unaware that the plea would result in deportation. (*Giron*, *supra*, 11 Cal.3d at p. 798.) Noting that the immigration consequences of certain criminal convictions may be "dire" for a noncitizen defendant (*ibid.*), we explained: "A trial court . . . may take into consideration such material matters with which an accused was confronted and as to which he made erroneous assumptions when he entered a guilty plea. The court might consider that justice would not be promoted if an accused, willing to accept a misdemeanor conviction and probationary status, cannot by timely action revoke his election when he thereafter discovers that much more serious sanctions, whether criminal or civil, direct or consequential, may be imposed." (*Id*. at p. 797.)

Responding to much the same concerns, the Legislature enacted section 1016.5 in 1977. Intended "to promote fairness" for noncitizen defendants who may not be aware that a conviction of certain offenses may have severe immigration consequences (§ 1016.5, subd. (d)), the provision instructs that before a court accepts any "plea of guilty or nolo contendere to any offense punishable as a crime under state law, except offenses designated as infractions under state law," it must advise the defendant as follows: "If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States" (*id*., subd. (a)). Failure to provide the required advisement constitutes grounds for vacating the judgment and withdrawing the guilty plea if the defendant can show that the plea "may have the consequences for the defendant of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of

9

the United States." (*Id.*, subd. (b); see generally *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 193.)

**B.**

Here, as in *Giron*, defendant seeks to withdraw his guilty plea on the ground that at the time of the plea he was unaware that the conviction would render him subject to removal from the United States. Under the Immigration and Nationality Act (8 U.S.C. § 1101 et seq.), "[a]ny alien who at any time after admission has been convicted of a violation of . . . any law or regulation of a State, the United States or a foreign country relating to a controlled substance . . . , other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable" (8 U.S.C. § 1227(a)(2)(B)(i)), and any such deportable alien "shall, upon the order of the Attorney General, be removed" (8 U.S.C. § 1227(a)). These provisions, as the United States Supreme Court has observed, "specifically command[] removal for all controlled substances convictions except for the most trivial of marijuana possession offenses." (*Padilla v. Kentucky* (2010) 559 U.S. 356, 368 (*Padilla*).) Although the Attorney General of the United States has limited discretion to cancel the removal of certain noncitizens, he has no power to cancel the removal of nonpermanent residents convicted of most controlled substance offenses. (8 U.S.C. § 1229b(b).)

The question before us is whether Patterson is barred from seeking section 1018 relief on grounds of mistake or ignorance because he received the standard advisement — given to all criminal defendants in California who plead guilty to any offense other than an infraction — that his or her criminal conviction "may" have adverse immigration consequences. (§ 1016.5.) We see no logical reason why the section 1016.5 advisement would operate as such a bar. A defendant entering a guilty plea may be aware that some criminal convictions may have immigration consequences as a general matter, and yet be unaware that a

10

conviction for a specific charged offense will render the defendant subject to mandatory removal. Thus, as we have previously noted in a different context, the standard section 1016.5 advisement that a criminal conviction "may" have adverse immigration consequences "cannot be taken as placing [the defendant] on notice that, owing to his particular circumstances, he faces an actual risk of suffering such." (*People v. Superior Court* (*Zamudio*), *supra*, 23 Cal.4th at p. 204.) And for many noncitizen defendants deciding whether to plead guilty, the "actual risk" that the conviction will lead to deportation — as opposed to general awareness that a criminal conviction "may" have adverse immigration consequences — will undoubtedly be a "material matter[]" that may factor heavily in the decision whether to plead guilty. (*Giron*, 11 Cal.3d at p. 797; cf. *INS. v. St. Cyr* (2001) 533 U.S. 289, 325 [for noncitizens, "[t]here is a clear difference . . . between facing possible deportation and facing certain deportation"]; *U.S. v. Rodriguez-Vega* (9th Cir. 2015) 797 F.3d 781, 790 ["Warning of the possibility of a dire consequence is no substitute for warning of its virtual certainty. As Judge Robert L. Hinkle explained, 'Well, I know every time that I get on an airplane that it could crash, but if you tell me it's going to crash, I'm not getting on.' [Citation.]"].)

Nor does it appear that the Legislature that enacted section 1016.5 intended the required advisements to serve as a categorical bar to the withdrawal of a guilty plea on grounds of mistake or ignorance. Addressing a similar issue in *In re Resendiz* (2001) 25 Cal.4th 230 (*Resendiz*), abrogated in part on other grounds by *Padilla*, *supra*, 559 U.S. at page 370, we held that receipt of the section 1016.5 advisement does not bar a criminal defendant from challenging his conviction on the ground that his counsel was ineffective in failing to adequately advise him about the immigration consequences of entering a guilty plea. (*Resendiz*, at pp. 241 (lead opn. of Werdegar, J.), 255 (conc. & dis. opn. of Mosk, J.).) We explained that, under section 1016.5, "defendants who wish to plead guilty are

11

entitled to receive from the court some advice regarding immigration consequences — a general warning of three immigration consequences that 'may' occur. [Citation.] In evaluating the court's advice, '[t]he defendant can be expected to rely on counsel's independent evaluation of the charges, applicable law, and evidence, and of the risks and probable outcome of trial.' " (*Resendiz*, at p. 247.) One of the purposes of the section 1016.5 advisement is to enable the defendant to seek advice from counsel about the actual risk of adverse immigration consequences. (See *Resendiz*, at p. 242 ["If anything, the statutory scheme contemplates an enhanced, not a diminished, role for counsel."].) This purpose is reflected in the requirement, set out in subdivision (b) of the statute, that, "[u]pon request, the court shall allow the defendant additional time to consider the appropriateness of the plea in light of the advisement." Subdivision (d) explains that the Legislature intended for courts to "grant the defendant a reasonable amount of time to negotiate with the prosecuting agency in the event the defendant or the defendant's counsel was unaware of the possibility of deportation, exclusion from admission to the United States, or denial of naturalization as a result of conviction." (§ 1016.5, subd. (d).)[4] The purpose is also evident in the special ground for a motion to withdraw a guilty plea set out in section 1016.5. That provision, in contrast to section 1018, permits a defendant

---

[4] This intent recently has been reinforced by the 2015 enactment of Penal Code section 1016.3, which requires that defense counsel "provide accurate and affirmative advice about the immigration consequences of a proposed disposition, and when consistent with the goals of and with the informed consent of the defendant, and consistent with professional standards, defend against those consequences" (*id.*, subd. (a)), as well as imposing a new requirement that "[t]he prosecution, in the interests of justice, . . . consider the avoidance of adverse immigration consequences in the plea negotiation process as one factor in an effort to reach a just resolution" (*id.*, subd. (b)).

12

who was not given the section 1016.5 advisement to move to withdraw his or her plea *at any time* if "conviction of the offense to which defendant pleaded guilty or nolo contendere may have the consequences for the defendant of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." (§ 1016.5, subd. (b).)[5] Nothing in the language of section 1016.5 suggests that the Legislature intended the generalized advisement to bar defendants from seeking the time-limited relief from a mistakenly entered guilty plea under section 1018.

In defending the trial court's ruling, the Attorney General relies on cases holding that a trial court generally has no duty to advise defendants of collateral consequences of a plea, including immigration consequences. (See, e.g., *U.S. v. Delgado-Ramos* (9th Cir. 2011) 635 F.3d 1237 [due process does not require trial court to advise the defendant of a plea's immigration consequences].) This is true, but the focus of a section 1018 inquiry is not what the trial court told the defendant; it is, rather, what the defendant knew when entering the plea. As we explained in *Giron*, to hold that ignorance of specific immigration consequences may constitute good cause to withdraw a plea is not to hold that the trial court is under a duty to provide such case-specific immigration advice. (*Giron*, *supra*, 11 Cal.3d at p. 797.) Even when a trial court has fulfilled its advisement duties, a defendant may show good cause to withdraw a guilty plea under section 1018

---

**5**      As noted, Patterson received the advisement, and he does not contend that the trial court was required under section 1016.5 to permit him to withdraw his guilty plea. (See *People v. Aguilar* (2014) 227 Cal.App.4th 60, 71 ["Section 1016.5 addresses only the duty of trial courts to advise the defendant of the immigration consequences of the plea, and it empowers the court to vacate a conviction and set aside a plea only for the court's failure to fulfill that duty." (Italics omitted.)].)

when, because of mistake or ignorance, the defendant has entered a guilty plea he or she would not otherwise have entered.  (*Cruz*, *supra*, 12 Cal.3d at p. 566.)

It is also true, as the Attorney General points out, that the immigration consequences of a guilty plea are often unclear, and it may be difficult to know with certainty at the time a noncitizen defendant enters a guilty plea whether the defendant will in fact face specific immigration consequences.  As the United States Supreme Court has observed, "[i]mmigration law can be complex," and there are "numerous situations in which the deportation consequences of a particular plea are unclear or uncertain."  (*Padilla*, *supra*, 559 U.S. at p. 369.) This means that there are indeed some cases in which the most that can reasonably be said is that the conviction "may" have adverse immigration consequences.  But when, as in this case, federal immigration law specifies in "succinct, clear, and explicit" terms that a criminal conviction will result in deportability, the United States Supreme Court has held that a criminal defense attorney must accurately advise his or her client of that consequence before the client enters a guilty plea. (*Id*. at pp. 368-369.)  The generic advisement under section 1016.5 is not designed, nor does it operate, as a substitute for such advice.

The Attorney General contends that Patterson, knowing his plea *could* have immigration consequences, made a calculated gamble to enter the plea without seeking advice from immigration counsel, and that he should be held to his part of the bargain in the same manner as a defendant who enters a guilty plea gambling that the sentencing court will treat him with leniency.  (*Giron*, *supra*, 11 Cal.3d at pp. 797-798, citing *People v. Burkett* (1953) 118 Cal.App.2d 204.)  But as we observed in *Giron*, there is an important distinction between the situation in which a defendant, aware that a conviction will render him subject to a particular set of penalties, nevertheless "enters a guilty plea hoping for leniency which is not forthcoming," and one in which the defendant is unaware that, in addition to any

14

punishment the court might impose, the guilty plea will also render him subject to mandatory deportation. (*Giron*, *supra*, 11 Cal.3d at p. 797.) We explained that in the latter situation, the defendant cannot be said to have "gambl[ed] on the severity of possible penalties," and therefore a court may exercise its discretion to grant or deny the motion to withdraw the plea after "considering all factors necessary to bring about a just result." (*Id*. at p. 798.) Of course, here, unlike in *Giron*, Patterson was advised that his plea "may" have immigration consequences. He alleges, however, that he and his counsel were unaware that his plea would make him subject to mandatory removal from the United States and would bar his future reentry. He further asserts that, but for his ignorance, he would not have entered the plea and would instead have attempted to negotiate an immigration-neutral disposition, or failing that, would have taken his case to trial. If those allegations are true, he did not appreciate the risk he was taking by entering a guilty plea. Nothing in our cases bars a trial court from exercising its discretion in these circumstances to grant or deny a motion under section 1018 to withdraw the plea on grounds of mistake or ignorance.

Patterson's motion to withdraw his guilty plea was not, in short, categorically barred by section 1016.5. Rather, as is typically the case under section 1018, a court asked to set aside a guilty plea based on mistake or ignorance of the deportation consequences is "properly vested with discretion to grant or to deny the motion after considering all factors necessary to bring about a just result." (*Giron*, *supra*, 11 Cal.3d at p. 798.) In exercising that discretion, a trial court may take into consideration the defendant's reaction to the section 1016.5 advisement — for example, whether the defendant acknowledged understanding the advisement and whether he or she expressed concerns about possible deportation consequences or sought additional time to consult with counsel. These considerations, along with any others that bear on the defendant's state of mind at

15

the time of the plea, may assist courts in evaluating a later claim that the defendant would not have entered the plea had he or she understood the plea would render the defendant deportable.

In this case, however, the trial court did not rule on whether Patterson had credibly demonstrated that he would not have entered a guilty plea to possession of a controlled substance had he known the plea's immigration consequences. Rather, in denying Patterson's motion, the trial court concluded that even if Patterson was unaware of the actual immigration consequences of his guilty plea, he could not, as a matter of law, show good cause to withdraw that plea because he had been advised that his plea "may" have adverse immigration consequences. This was error. We accordingly reverse the judgment of the Court of Appeal and direct it to remand this case to the trial court, so that the trial court may exercise its discretion to determine whether Patterson has shown good cause to withdraw his guilty plea on grounds of mistake or ignorance.[6]

---

[6] In support of his argument that the trial court properly denied the motion to withdraw the guilty plea, the Attorney General relies on *People v. Flores* (1974) 38 Cal.App.3d 484, *People v. Quesada* (1991) 230 Cal.App.3d 525, and *People v. Castaneda* (1995) 37 Cal.App.4th 1612. All three cases are distinguishable. In *Flores*, the Court of Appeal concluded that the trial court had not abused its discretion when it denied the motion to withdraw of a defendant who was aware the plea would render him deportable, but was not aware of the risk that federal authorities would in fact deport him. (*Flores*, *supra*, 38 Cal.App.3d at p. 488.) In *Quesada*, the court, relying on *Flores*, similarly concluded that the trial court had not abused its discretion when it denied a withdrawal motion by a defendant who not only received the standard section 1016.5 advisement, but who also, the court inferred from the record, was aware of a specific risk of deportation in his particular case. (*Quesada*, *supra*, 230 Cal.App.3d at p. 539.) In *Castaneda*, the defendant sought to withdraw his plea under section 1016.5, subdivision (b), on the ground that he had not received the required advisement, even though he had previously received the advisement in a different criminal proceeding. The court concluded that a defendant who is aware of the content of that advisement may not file a special motion to withdraw under section 1016.5, subdivision (b).

*(Footnote continued on next page.)*

## III.

Because the trial court has not yet exercised its discretion to determine whether Patterson should be permitted to withdraw his guilty plea, there is no need at this time to address Patterson's claim, raised in the habeas corpus petition filed in this court, that his plea was constitutionally invalid because trial counsel rendered ineffective assistance at the time of his guilty plea. If the trial court grants Patterson's motion to withdraw his guilty plea, the habeas corpus petition will become moot; if the trial court denies the motion, the merits of the habeas corpus petition must be resolved. We will therefore transfer the habeas corpus petition to the superior court with directions to consider it if it becomes necessary to do so. (See generally *In re Hawthorne* (2005) 35 Cal.4th 40, 44 [habeas corpus petition transferred to the superior court after this court issued an order to show cause].)

Although the superior court previously denied the habeas corpus petition Patterson filed in that court, it did so without issuing an order to show cause or conducting an evidentiary hearing. Our issuance of an order to show cause in this matter reflects this court's determination, contrary to that of the superior court, that Patterson has stated a prima facie claim for relief. (*People v. Superior Court (Pearson)* (2010) 48 Cal.4th 564, 572 ["A court issues an order to show cause in a habeas corpus matter only when the petitioner has stated a prima facie case for relief on one or more claims."].) That determination does not, of course, mean that his

---

*(Footnote continued from previous page.)*

(*Castaneda*, *supra*, 37 Cal.App.4th at pp. 1619-1620.) In none of these cases did the court conclude that receipt of the section 1016.5 advisement categorically bars a noncitizen defendant from seeking to withdraw a guilty plea under section 1018 based on a lack of awareness that the plea would render the defendant deportable.

conviction must be overturned.  Issuance of an order to show cause is, rather, "an intermediate but nonetheless vital step in the process of determining whether the court should grant the affirmative relief that the petitioner has requested," which institutes " 'a proceeding in which issues of fact are to be framed and decided.' " (*People v. Romero* (1994) 8 Cal.4th 728, 740 (*Romero*).)  We express no view as to whether Patterson will ultimately be entitled to relief on his habeas corpus claim.

In the event the trial court finds it necessary to evaluate Patterson's habeas petition, it must employ a two-step process.  First, the court must determine "whether counsel's representation 'fell below an objective standard of reasonableness,' " as judged by " 'prevailing professional norms.' " (*Padilla*, *supra*, 559 U.S. at p. 366, quoting *Strickland v. Washington* (1984) 466 U.S. 668, 688.)  Second, the court must determine whether " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (*Ibid.*)

Here, Patterson alleges that his trial counsel's representation was constitutionally deficient because counsel was unable to advise him on the likelihood that his acceptance of the proffered plea bargain would result in his deportation.  In *Resendiz*, we expressly declined to "address whether a mere failure to advise [of immigration consequences] could . . . constitute ineffective assistance," instead holding only that a counsel's affirmative misadvice concerning the risk of deportation may give rise to an ineffective assistance claim. (*Resendiz*, *supra*, 25 Cal.4th at p. 240 (lead opn. of Werdegar, J.); see *id*. at p. 255 (conc. & dis. opn. of Mosk, J.).)  But in *Padilla*, the high court expressly rejected the argument that claims of ineffective assistance are limited to instances of affirmative misadvice, reasoning that a rule that encouraged attorneys to remain silent about immigration consequences "would be fundamentally at odds with the critical obligation of counsel to advise the client of 'the advantages and

18

disadvantages of a plea agreement.' " (*Padilla*, *supra*, 559 U.S. at p. 370.) Although the high court explained that when "the deportation consequences of a particular plea are unclear or uncertain" and "the law is not succinct and straightforward," counsel "need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences," the court also explained that where the immigration consequences of a guilty plea are clear, the defendant's right to receive accurate advice is "equally clear." (*Id.* at p. 369.)

To establish that he was prejudiced by counsel's alleged errors, Patterson must show "that a reasonable probability exists that, but for counsel's incompetence, he would not have pled guilty and would have insisted, instead, on proceeding to trial." (*Resendiz*, *supra*, 25 Cal.4th at p. 253.)[7] Here, Patterson alleges that he would not have accepted the plea bargain had he been aware of the deportation consequences, and the Attorney General denies that this is the case. Ordinarily, an evidentiary hearing is the appropriate means of resolving factual disputes of this nature. (*Romero*, *supra*, 8 Cal.4th at pp. 739-740 ["if the return and traverse reveal that petitioner's entitlement to relief hinges on the resolution of factual disputes, then the court should order an evidentiary hearing"].) A hearing is particularly appropriate when, as in this case, trial counsel is unwilling to

---

[7] Currently pending before the United States Supreme Court is *Lee v. United States* (6th Cir. 2016) 825 F.3d 311 (cert. granted Dec. 14, 2016, __ U.S. __ [__ S.Ct. __]), which presents the question (as stated in the petition for writ of certiorari) "[w]hether it is always irrational for a defendant to reject a plea offer notwithstanding strong evidence of guilt when the plea would result in mandatory and permanent deportation." The high court's decision in *Lee* may provide additional guidance in evaluating the question of prejudice should the trial court conclude that counsel rendered ineffective assistance.

19

provide a declaration describing her discussions with the defendant before the latter accepted the plea bargain.  Patterson argues that the prosecution cannot allege in good faith that he would have accepted the plea bargain even if he was aware of its immigration consequences because they have not proffered facts tending to show that such was the case, but the prosecution cannot come forward with such facts if trial counsel is unwilling to submit a declaration.  The question whether Patterson would have rejected the proffered plea bargain if he had been aware of its effect on his deportation status thus may require resolution at a hearing at which trial counsel, and perhaps Patterson himself, can offer testimony that may be assessed by the trial court.

The trial court may, in its discretion, elect to consolidate the habeas corpus proceedings with the motion to withdraw the guilty plea, and to resolve both matters in a single evidentiary hearing.

## IV.

We reverse the judgment of the Court of Appeal.  The Court of Appeal is directed to remand the matter to the trial court for further proceedings consistent with this opinion.  In a separate order to be filed when this matter becomes final, we will transfer the original habeas corpus petition filed in this court to the superior court for further proceedings consistent with this opinion.

KRUGER, J.

WE CONCUR:

CANTIL-SAKAUYE, C. J.
WERDEGAR, J.
CHIN, J.
CORRIGAN, J.
LIU, J.
CUÉLLAR, J.

20

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Patterson
_____

**Unpublished Opinion** XXX NP opn. filed 3/9/15, 4th Dist., Div. 2
**Original Appeal**
**Original Proceeding**
**Review Granted**
**Rehearing Granted**

_____

**Opinion No.** S225193
**Date Filed:** March 27, 2017
_____

**Court:** Superior
**County:** Riverside
**Judge:** Helios (Joe) Hernandez

_____

**Counsel:**

A. J. Kutchins for Defendant and Appellant.

Kamala D. Harris, Attorney General, Kathleen A. Kenealy, Acting Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L Garland, Assistant Attorney General, William M. Wood, Heather Crawford, Steven T. Oetting, A. Natasha Cortina and Meagan J. Beale, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

A. J. Kutchins
P.O. Box 5138
Berkeley, CA  94705
(510) 841-5635

Meagan J. Beale
Deputy Attorney General
600 West Broadway, Suite 1800
San Diego, CA  92101
(619) 645-2225