Filed 6/9/25  P. v. Valin CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>  v.<br><br>HAWKEYE JAMES VALIN,<br><br>      Defendant and Appellant. | C098793<br><br>(Super. Ct. No. SCCRCRF20221120) |

Defendant appeals from the judgment following his plea of no contest to a charge of mayhem.  Defendant contends the trial court erred by denying his motion to withdraw his plea.  We see no abuse of discretion and will affirm.

BACKGROUND

Defendant was drinking alcohol at a festival and got into an argument.  The argument turned into a fight, and defendant "bit a large portion of the victim's left ear off."

1

The People charged defendant with mayhem (Pen. Code,[1] § 203) and assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)). The People alleged defendant personally inflicted great bodily injury (§ 12022.7, subd. (a)) in the commission of both offenses and alleged seven aggravating circumstances.

The People offered to dismiss the assault charge in return for defendant pleading guilty or no contest to mayhem, admitting the great bodily injury allegation, admitting five of the alleged aggravating circumstances, and agreeing to a suspended sentence of eight years in prison with a five-year probation term. The offer also permitted defendant to be released from custody pending sentencing, pursuant to certain terms, with the trial court permitted to impose a different sentence if defendant violated those terms. (See *People v. Cruz* (1988) 44 Cal.3d 1247, 1254, fn. 5.)

At the hearing scheduled for a preliminary examination of the case, defendant's counsel informed the trial court that defendant had accepted the People's offer against the advice of counsel. The court conferred with the parties off the record, and defendant's counsel explained that defendant "has a very optimistic view of how the next five years [on probation] are going to go," but she "failed to persuade him even as far as waiting a couple of weeks to just think about this because the People's offer would as I understand it remain open even if he took two or three weeks to think about it."

The trial court then explained the offered plea agreement to defendant:

"[F]irst of all, my understanding is the plea deal is that the end result is an executed suspended imposed eight year state prison sentence and you'd be put on probation for five years. [Confirms the plea is to a violent offense.] So that means if you ultimately go to state prison you'll do eight years at 85 percent of the time.

---

[1]   Undesignated statutory references are to the Penal Code.

"A Cruz waiver means that you get released after you[r] plea today and you would be released on certain terms and conditions.

"If you violate any of those terms and conditions, then typically the probation deal may be off the table. So it would still be up to the judge but off the table and you would go ahead and get sentenced to eight years in state prison.

"Of course, if you succeed for four weeks without getting into trouble and come back and get sentenced, then you'll need to stay out of trouble for five years; and during that five years, if you violate your probation you would then end up with the eight years at 85 percent."

"[Y]ou understand all that?" Defendant said yes.

After a further conference off the record, the trial court had a further colloquy with defendant:

"THE COURT: [T]he other thing I wanted to remind you is that your attorney is not in agreement with this plea deal, doesn't believe it's in your best interest to take this plea deal at that time. Do you understand that?

"THE DEFENDANT: Yes, sir.

"THE COURT: Do you understand that generally that would -- should give you some pause or caution to think about what you're doing when your attorney says you may not want to do this, this might not be in your best interest? Do you understand that?

"THE DEFENDANT: Yes, I do.

"THE COURT: Have you had enough time to think about the case and the proposed resolution and the fact that your attorney has suggested that this is not -- not in your best interest at this time? Have you had enough time to think about that?

"THE DEFENDANT: Yeah.

"THE COURT: And based on your reflection and thinking about it you still want to go forward with the plea agreement even though it's contrary to what your attorney's advice is to you?

"THE DEFENDANT: Yes, sir.

"THE COURT: You sure?

"THE DEFENDANT: Yeah, I've had enough time to think about it.

"THE COURT: Were you talking to me?

"THE DEFENDANT: Yes, sir.

"THE COURT: I couldn't hear what you said. What did you say?

"THE DEFENDANT: I've had enough time to think about it.

"THE COURT: What do you want to do, do you want to go forward or do you want to wait?

"THE DEFENDANT: I'll go forward.

"THE COURT: Okay. So I have a plea form in my hand and on the right-hand side are various boxes with the initials H.V. Are those your initials?

"THE DEFENDANT: Yes, sir.

"THE COURT: Did you read each of the paragraphs that you initialed? Did you read each of the paragraphs that you initialed?

"THE DEFENDANT: Oh, yes. Yes, sir, I did.

"THE COURT: Did you understand each of the paragraphs?

"THE DEFENDANT: Yes.

"THE COURT: Okay. Do you have any questions for me before we begin?

"THE DEFENDANT: No, sir.

"THE COURT: Do you understand that you're here today for what's called a preliminary hearing. That's a probable cause hearing. And you have a right to have that hearing. [¶] You have a right to be represented by an attorney at that hearing. At that hearing the attorney can confront and cross-examine witnesses who testify against you. You can have the attorney put on a defense, that includes the right to subpoena witnesses and evidence at no cost to you. You could testify or you could choose to remain silent. [¶] Do you understand all those rights?

4

"THE DEFENDANT: Yes, sir.

"THE COURT: Do you want to give those rights up and your right to the preliminary hearing so you can resolve this today?

"THE DEFENDANT: Yes, sir.

"THE COURT: Okay. You also have a right to a jury trial, and at a jury trial the prosecution has to prove the case against you beyond a reasonable doubt convincing all 12 jurors that you're guilty. [¶] At that trial similar to the preliminary hearing you have a right to be represented by an attorney. You have a right to have that attorney confront and cross-examine any witness who testifies against you. You can put on a defense at the time of the trial, which includes the right to subpoena witnesses and evidence at no cost to you. [¶] You can also choose to remain silent. You can testify in your own defense but you also could remain silent and force the government to prove the case against you beyond a reasonable doubt. Do you understand all those rights?

"THE DEFENDANT: Yes, sir.

"THE COURT: With that understanding do you want to give up your right to a jury trial and resolve this case today?

"THE DEFENDANT: Yes, sir.

"THE COURT: All right. Are you currently taking any medication that affects your ability to think clearly today? [¶] I note that there's an indication of a medication on the form but are you clear thinking, you understand what's going on?

"THE DEFENDANT: Yes, sir.

"THE COURT: Okay. Do you understand that if you're not a citizen of the United States you could be deported, denied naturalization and amnesty and basically be excluded from the United States. Do you understand that?

"THE DEFENDANT: Yes, sir.

"THE COURT: You also understand that if you're convicted of a felony you'd be forever barred from possessing firearms and ammunition. Do you understand that?

5

"THE DEFENDANT:  Yes, sir.

"THE COURT:  Is it your intention to enter your plea freely and voluntarily with a full understanding of everything we've talked about and what's on the plea form?

"THE DEFENDANT:  Yes, sir.

"THE COURT:  Has anybody made any promises to you to get you to enter a plea today other than what we've talked about in open court and what's on the plea form?

"THE DEFENDANT:  Wait, say that again.

"THE COURT:  Has anybody made any promises to you to get you to enter a plea today other than what's been talked about in open court today and what's on this plea form?

"THE DEFENDANT:  No, sir.

"THE COURT:  Okay. And has anybody made any threats against you or your family member or any loved ones to get you to enter a plea today?

"THE DEFENDANT:  No.

Defendant then pled no contest to one count of mayhem and admitted to personally inflicting great bodily injury on the victim.  Defendant also admitted five alleged aggravating circumstances.  On the plea form, defendant indicated that he had read and initialed each applicable term, discussed each term with his attorney, understood, and agreed with each term.  Defendant specifically indicated, "I am not taking any medication that affects my ability to understand this form and the consequences of my plea, have not recently consumed any alcohol or drugs, and am not suffering from any medical condition, except for the following:  [¶]  Busber."[2] Defendant's counsel also indicated on the plea form that she explained each term to

---

**2**      The record does not indicate the meaning of "Busber," nor does it appear to be information subject to judicial notice.

6

defendant, explained his rights, and answered all of his questions about the plea agreement. The trial court granted the People's motion to dismiss the assault charge.

At the sentencing hearing, defendant's counsel again stated that defendant had entered his plea against her advice. The People then asked the trial court to discuss the plea agreement with defendant. In response to the court's questioning, defendant confirmed that his counsel had explained why she thought the plea agreement was not a good deal. When asked whether he still wished to go forward with sentencing, defendant said, "I feel like I should go forward because I'm basically already committed." When asked if he would like more time to consider, defendant said he did not want the offer to be revoked. Defendant's counsel also indicated that he had a spot opening at a residential rehabilitation program on Friday, which would make it difficult to continue the hearing for an extended period of time. The court decided to continue the hearing until later that afternoon to give defendant more time to discuss the plea agreement with his counsel.

When they returned, defendant's counsel explained that "he is conflicted." When asked for further detail, counsel stated: "[defendant] has not completed a statement to me about it but I believe he is very ambivalent about going forward and he's very afraid. So I don't think he understands -- I think he's beginning to understand the gravity of and the lifelong consequences of this plea. [¶] I think he's now got himself in a bit of a conundrum that his immaturity and lack of life experience in terms of the commitment to rehab treatment that he's made is a smart priority but it gets -- he's not sure what not going forward with the plea does with that other obligation. [¶] So it's complicated and I'm not sure he has the personal resources to manage all of it." When asked whether defendant understood the extensive questioning by the judge who accepted his plea, counsel replied: "I don't believe [defendant] understood that he had a true choice to say no."

The trial court then asked defendant whether he wanted to continue the hearing or go ahead with sentencing, explaining that the court would endeavor to select a date for

7

the continued hearing that did not conflict with defendant's planned residential rehabilitation program. Defendant responded, "Yes, I don't want to take the plea deal if -- well, I don't want to take the plea deal; but if I have to go into custody today, then I would just like to keep the plea deal." The court replied, "I don't have any reason to put you into custody today." The People then asked for the sentencing to go forward. Defendant's counsel suggested that defendant was trying to articulate a desire to withdraw his plea. The court continued the sentencing hearing and told defendant he must file a motion if he wanted to withdraw his plea.

Defendant filed a motion seeking to withdraw his plea, arguing his free will had been overcome by a combination of untreated anxiety and depression, youth, and the coercive effect of the term in the plea agreement allowing defendant to be released immediately. At the hearing on the motion, defendant also argued that the plea agreement was inequitable as compared to another plea agreement in a similar case. The People responded that defendant could not establish by clear and convincing evidence that good cause exists to permit defendant to withdraw his plea.

The trial court found that there was no evidence of depression, anxiety, or other mental illness affecting defendant's plea and that the colloquy with defendant had been very thorough. Rather, defendant's own testimony indicated he wanted to avoid further incarceration, which was "a perfectly good reason" to accept the plea agreement. The court also found that the mental health assessment attached to defendant's motion failed to state or give any analysis indicating depression or anxiety could have affected defendant's plea. Accordingly, the court found that defendant had not met his burden to show by clear and convincing evidence that he had good cause to withdraw his plea and denied the motion.

The trial court then sentenced defendant, in accordance with the plea agreement, imposing the upper-term sentence of eight years in prison for mayhem, suspending the execution of the sentence, and placing defendant on probation for five years. Defendant

8

filed a timely notice of appeal and two timely amended notices, each of which requested a certificate of probable cause to challenge the validity of defendant's plea. The trial court denied the request for a certificate of probable cause each time.

Defendant sought a writ of mandate from this court ordering the trial court to grant a certificate of probable cause.[3] This court sent a notice indicating that it was "considering issuing a peremptory writ of mandate in the first instance, i.e., without first issuing an alternative writ. (*Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171.)" (*Valin*, *supra*, C101405.) We informed the trial court that it could "avoid issuance of the writ by vacating its decision denying [defendant]'s application for a certificate of probable cause that was filed with his April 18, 2023, notice of appeal and by issuing a new and different order that grants defendant's application." (*Ibid*.) The trial court submitted a notice indicating it had changed it decision and granted a certificate of probable cause, and this court deemed the new notice of appeal timely filed.

DISCUSSION

Defendant contends the trial court abused its discretion by denying his motion to withdraw his plea. Specifically, defendant contends the court "gave insufficient weight to [defendant]'s mental health diagnoses and undue weight to irrelevant factors." We are not persuaded that the court abused its discretion.

A trial court may permit a defendant to withdraw a guilty plea for "good cause shown" at any time before judgment. (§ 1018.) " 'Mistake, ignorance or any other factor overcoming the exercise of free judgment is good cause for withdrawal of a guilty plea' under section 1018 [citation], and section 1018 states that its provisions 'shall be liberally

---

[3]     The parties discuss the writ proceeding, *Valin v. The Superior Court of Siskiyou County*, Court of Appeal, Third Appellate District, case No. C101405 (*Valin*), in their briefing but do not ask us to incorporate the record by reference. We do so on our own motion. (Cal. Rules of Court, rules 8.147, 8.155.)

9

construed . . . to promote justice.' " (*People v. Patterson* (2017) 2 Cal.5th 885, 894.)  "A defendant seeking to withdraw a guilty plea on grounds of mistake or ignorance must present clear and convincing evidence in support of the claim." (*Ibid.*)

"A trial court's decision whether to permit a defendant to withdraw a guilty plea under section 1018 is reviewed for abuse of discretion." (*People v. Patterson*, *supra*, 2 Cal.5th at p. 894.)  " 'Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion "must not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*People v. Williams* (2013) 58 Cal.4th 197, 270-271.)  In conducting this analysis, "a reviewing court must adopt the trial court's factual findings if substantial evidence supports them." (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254.)

Here, defendant has failed to establish that the trial court abused its discretion. The trial court considered the extensive evidence from the plea colloquy and several subsequent colloquies at the sentencing hearing, which indicated that defendant understood the consequences of the plea agreement and chose to accept the deal to avoid further imprisonment.  The court even specifically asked defendant about his medication and his mental state:  "there's an indication of a medication on the form but are you clear thinking, you understand what's going on?"  Defendant responded, "Yes, sir."

Against this evidence, the trial court weighed the scant evidence that defendant suffered from mental health conditions that may have affected his decision.  In the trial court and in his briefing on appeal, defendant has offered nothing other than an argument by his counsel to explain how his mental health diagnoses overcame the exercise of his free judgment.  As the trial court explained, the "Provisional Diagnosis Form" defendant offered as evidence concludes that defendant "meets criteria" for severe "Alcohol Use Disorder," and "meets medical necessity for substance use disorder treatment at this

time." This cannot support a finding that defendant's other two mental health diagnoses, which were only tangentially mentioned in the form, affected his plea.

Defendant is correct when he states, "It is not clear how much knowledge the court had regarding the way depression and anxiety can be expressed or how the court believes depression and anxiety typically appear." Defendant failed to introduce any evidence to establish those facts, and the trial court properly did not rely on its own knowledge when making its decision. (See *Abatti v. Imperial Irrigation Dist.* (2020) 52 Cal.App.5th 236, 286 [a "court's personal experience is not evidence"]; Evid. Code, § 140.) In the absence of any evidence linking these provisional diagnoses to defendant's plea, the trial court properly gave this evidence no weight.

Defendant's argument that the trial court abused its discretion because it muddled the story of a professional boxer biting off a piece of an opponent's ear fares no better. The court was addressing a separate argument, which defendant has not maintained on appeal, that the plea deal was inequitable as compared with another plea agreement in a similar case. We need not address this argument except to note that, in these circumstances, it has no relevance to whether defendant exercised his free judgment in making his plea.

We also note that defendant misrepresents the record by suggesting he felt pressured not to withdraw his plea "[b]ecause withdrawing his plea would mean returning to the county jail instead of being released to a program where he could continue treatment." There was no such pressure. On the contrary, when defendant expressed fear of being taken into custody if he asked for a continuance, the trial court reassured him, "I don't have any reason to put you into custody today." The court then continued the hearing and released defendant to participate in the treatment program and later continued the hearing again while defendant was participating in the program, in part because his counsel needed additional time to prepare a motion to withdraw his plea. Defendant used

11

this extra time to file a motion to withdraw his plea, belying his contention that he was pressured not to do so.

Finally, having determined the trial court did not abuse its discretion, we need not address defendant's contention that his request to withdraw his plea was not manipulative or frivolous. We agree, but a court does not abuse its discretion by rejecting a nonfrivolous motion to withdraw a plea. Defendant must establish that the court " ' "exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*People v. Williams*, *supra*, 58 Cal.4th at pp. 270-271.) Defendant has not done so here.

## DISPOSITION

The judgment is affirmed.

_____\s\_____
Krause, J.

We concur:

_____\s\_____
Earl, P. J.

_____\s\_____
Hull, J.

12