Filed 8/5/25  P. v. Montelongo CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALEJANDRO DIEGO MONTELONGO,<br><br>    Defendant and Appellant. | D084320<br><br><br><br>(Super. Ct. No. SCN020746) |

APPEAL from an order of the Superior Court of San Diego County, Daniel F. Link, Judge.  Affirmed.

The Matian Law Firm and Kevin M. Martinez-Martinez for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel Rogers and Adrian R. Contreras, Deputy Attorneys General, for Plaintiff and Respondent.

Alejandro Diego Montelongo[1] contends that the trial court erred when it denied his motion to vacate his conviction.  We independently review the trial court's order and affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

In 1995, Montelongo pled guilty to one count of violating Penal Code section 261.5 (sexual intercourse with a person under age 18).[2]  As the factual basis, the plea form stated, "Defendant had sexual intercourse consensually with his under-18-years-old girlfriend."  Montelongo's initials appear on the plea form next to the statement that "I understand that if I am not a citizen of the United States a plea of Guilty or No Contest could result in deportation, exclusion from admission to this country, and/or denial of naturalization."  The minute order for the change of plea hearing reflects that Montelongo was placed under oath, and that the court advised him that conviction of the offense "may have the consequences of deportation, exclusion from admission to the United States or denial of naturalization pursuant to the laws of the United States."

The offense was later reduced to a misdemeanor, and the court sentenced Montelongo to probation.  The 1995 probation report stated that Montelongo was born in Mexico, was undocumented and that he resided in San Diego County with his parents and six siblings.  It notes that he had

---

[1]    Although the court minutes, the notice of appeal, and other documents in the record often use the name Alejandro Montelongo Diego, in his sworn declarations he states his true name is "Alejandro Diego Montelongo."  We refer to him by his true name.

[2]    Further unspecified statutory references are to the Penal Code.

briefly been employed at Burger King. The probation report further noted that "[n]otification has been sent to Immigration officials regarding the defendant's present conviction and custody status." It stated that he had no prior record of criminal conduct, that he was 20 years old and that he had completed twelve years of education. The probation order stated that he was not to "enter or be in the U.S.A. unless properly documented evidencing your lawful presence."

Twenty-eight years later, in 2023, Montelongo filed a motion to vacate his conviction pursuant to section 1473.7(a)(1). In support of the motion, Montelongo filed a declaration and a supplemental declaration. He stated that he had been born in Mexico and had come to the United States in 1990 at the age of 15. He graduated from Oceanside High School in 1993. Thereafter, he worked as a gardener, mason, and handyman. In 2005, he unsuccessfully applied to become a lawful permanent resident of the United States. He married in 2006. He had three children born between 1999 and 2016. Each child was a citizen of the United States. He had many family members who live in the United States. He stated:

> "Remaining in this safe country has always been my priority. I know that if I had understood that my conviction would result in my deportation or other immigration consequences, I would have been afraid and requested that my defense attorney seek other alternatives. [¶] Based on my lack of knowledge and understanding of the immigration consequences, I pled to the charges. I mistakenly believed and understood that by being out of custody, staying out of trouble and completing my sentencing requirements I would be safe from immigration consequences."

After hearing argument, the court denied the motion, stating:

> "The best argument is the fact that he was younger when this occurred. However, the record that it appears that it

3

was explained to him. It was in the arrest report. I do find the probation report to be important such as you have to look at the whole picture before, during, and after it appears it was an issue. It appears by all accounts it was explained to him. And unfortunately the bias that's contained within the declaration itself, I'm not saying it doesn't have meaning. It does [have] some value. But it doesn't reach the threshold. I can't get over the burden such to grant this motion. And therefore respectfully this motion is denied."

Montelongo timely appealed.

## II. DISCUSSION

Under section 1473.7(a)(1), a person not in custody may file a motion to vacate a conviction if the conviction is legally invalid "due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence." The moving party must prove prejudicial error by a preponderance of the evidence and must also establish that the conviction "is currently causing or has the potential to cause removal or the denial of an application for an immigration benefit, lawful status, or naturalization." (*Id.*, subd. (e)(1).)

When a motion to vacate a conviction was heard on a cold record by a trial court judge who was not otherwise familiar with the underlying case, we "decide, based on [our] independent judgment, whether the facts establish prejudice under section 1473.7." (*People v. Vivar* (2021) 11 Cal.5th 510, 528 (*Vivar*).) Here, the motion, brought 28 years after Montelongo's plea, was heard by a judge who was new to the case.

"[S]howing prejudicial error under section 1473.7, subdivision (a)(1) means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or

4

potential immigration consequences. When courts assess whether a petitioner has shown that reasonable probability, they consider the totality of the circumstances. [Citation.] Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible." (*Vivar*, 11 Cal.5th at pp. 529–530.)

As an initial matter, Montelongo does not establish that any error occurred. Montelongo was represented by counsel. The plea form contained an advisal of immigration consequences. Before his plea, the court advised him of the possibility of immigration consequences. The probation report prepared for his sentencing referenced immigration consequences.[3] Montelongo faults the advisal for stating he "could" be subject to immigration consequences, because he asserts that his conviction could be considered a conviction for "child abuse," (8 U.S.C. 1227(a)(2)(E)(i)) which would subject him to mandatory deportation.

Montelongo correctly argues that for convictions as to which deportation is mandatory, an advisal of possible consequences is insufficient. (See, e.g. *Vivar, supra*, 11 Cal.5th at p. 533 ["The problem for Vivar, though,

---

[3]    The probation report was prepared after Montelongo changed his plea, and therefore its reference to immigration consequences arguably is not relevant to his understanding of such consequences at the time of his plea. However, as pointed out by the Attorney General, if he had previously been unaware of the immigration consequences, upon reading the report, he could have asked to withdraw his plea. A reasonable inference is that he did not do so because he was aware of such consequences at the time of the plea.

was that deportation in these circumstances was mandatory—and when he accepted the plea deal, he remained unaware of that crucial fact."]; see also *People v. Patterson* (2017) 2 Cal.5th 885, 889, 895 (*Patterson*); *People v. Espinoza* (2018) 27 Cal.App.5th 908, 916–917; *People v. Ruiz* (2020) 49 Cal.App.5th 1061, 1066.)

But in 1995, when Montelongo entered his plea, federal law did not include child abuse as an offense triggering deportation. As noted in *Matter of Aguilar-Barajas* (Board of Immigration Appeals 2021) 2021 WL 3290433, it was not until 1996 that Congress added child abuse to the criminal offenses triggering removal. Thus, his advisals in 1995 that immigration consequences "could" result from his guilty plea were not inaccurate. In distinguishing plea advisals made when federal laws provide for mandatory immigration consequences, in *Patterson, supra,* 2 Cal.5th at pp. 897–898, our Supreme Court noted that "it may be difficult to know with certainty at the time a noncitizen defendant enters a guilty plea whether the defendant will in fact face specific immigration consequences." "This means that there are indeed some cases in which the most that can reasonably be said is that the conviction 'may' have adverse immigration consequences." (*Id.* at p. 898.) This is such a case.

In support of his contention that he subjectively misunderstood the consequences of his plea, Montelongo states in his declaration that, "In 2005, I applied through my job to become a legal permanent resident, but the application was denied." He argues that he would not have applied for residency if he had understood the risk of bringing himself to the attention of the immigration authorities.

We are left to speculate as to the circumstances of his decision to apply for residency in 2005 and as to the reason for the denial of his application;

6

but in any event, we note that rather than being mistaken, it appears from the record before us that Montelongo's understanding was accurate—other than the denial of his 2005 application for a green card, he has been free from immigration consequences for almost thirty years. (Cf. *People v. Alatorre* (2021) 70 Cal.App.5th 747, 769 (*Alatorre*) [appellant's naturalization application triggered his deportation].)

Further, Montelongo does not offer any explanation for his alleged inability to understand the written and spoken advisals. In short, Montelongo does not point to any error by court or counsel or any other condition, event or factor that damaged his "ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences" of his plea (§ 1473.7, subd. (a)(1)).

Even if, notwithstanding the advisal, Montelongo could not and did not understand that his conviction could result in immigration consequences,[4] he must establish that any error was prejudicial. As the court in *Vivar* explained, prejudice in this context depends upon whether it is reasonably probable that he would not have pled guilty if he had "correctly understood its actual or potential immigration consequences." (*Vivar, supra*, 11 Cal.5th at p. 529.) In considering prejudice, "the court should consider 'evidence that would have caused the defendant to expect or hope a different bargain would or could have been negotiated.'" (*Vivar,* at p. 529 (italics omitted), citing

---

[4]  As Montelongo notes, his subjective error in understanding can be sufficient. (See *Alatorre, supra*, 70 Cal.App.5th at pp. 752, 770.) But as he concedes, there must be corroborating objective evidence sufficient to show that he misunderstood the consequences of the plea. (*Id.* at p. 770.)

*People v. Martinez* (2013) 57 Cal.4th 555, 567.)  Montelongo does not provide such evidence.

Important here, to meet the burden of proof, when a defendant seeks to withdraw a plea under section 1473.7, he must corroborate the statements in his declaration with objective evidence.  (*Vivar, supra,* 11 Cal.5th at p. 530.)  In *Vivar*, the moving party had offered ample objective evidence that he would never have accepted the plea had he realized the immigration consequences, including the facts of his personal situation at the time of his plea; the contemporaneous notes and recollection of his defense counsel; and letters that he had written to the court around the time of his plea.  The objective evidence submitted by Vivar in support of his motion convinced our Supreme Court upon its independent review that at the time of his plea, it was reasonably probable that Vivar would not have agreed to the plea if he had understood that it would result in his imminent, mandatory deportation.  (*Id.* at pp. 520, 533.)

Montelongo stated that "[b]ased on my lack of knowledge and understanding of the immigration consequences, I pled to the charges.  I mistakenly believed and understood that by being out of custody, staying out of trouble and completing my sentencing requirements I would be safe from immigration consequences."  But other than this assertion, Montelongo points to no evidence regarding the factors highlighted by *Vivar*:  "[his] ties to the United States [at the time of his plea], the importance [he] placed on avoiding deportation, [his] priorities in seeking a plea bargain, and whether [he] had reason to believe an immigration-neutral negotiated disposition was possible."  (*Vivar, supra,* 11 Cal.5th at p. 530.)  The record merely shows that at the time of his plea, Montelongo was an unmarried 28 year old with no

8

children, who had been in the United States for five years and had graduated from high school in Oceanside.

In sum, the objective evidence falls short of demonstrating that Montelongo misunderstood the potential immigration consequences when he pled guilty; and even if we credit his current statements that he did not understand the consequences at the time of his plea, we conclude that there is insufficient objective evidence to establish a reasonable possibility that, with a correct understanding, he would have rejected the plea.

Finally, Montelongo contends that the court erred when it referenced Montelongo's more recent conviction for DUI and a pending DUI charge against him. Specifically, after denying the motion, the court noted that "frankly, as a side note, it seems like his bigger issue are the DUI's. But I guess he'll cross that bridge if he ever gets there." Montelongo argues that the court's statement indicated that the court was distracted from considering the plea that was the subject of the motion, because the later cases were not relevant to the motion before the court. We agree with Montelongo that the DUI cases were not before the court for purposes of Montelongo's current motion, but it is clear from the court's ruling that the mention of Montelongo's more recent DUI issues had nothing to do with the court's ruling on the motion. That ruling focused, as we do, on the lack of objective evidence to support Montelongo's declaration.

### III.  DISPOSITION

The trial court's order denying Montelongo's motion to vacate his conviction is affirmed.

KELETY, J.

WE CONCUR:

DATO, Acting P. J.

CASTILLO, J.