Filed 6/1/22  P. v. Motsinger CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E078040 |
| v. | (Super.Ct.No. FVI20001344) |
| DANIEL CHARLES MOTSINGER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Antoine F. Raphael, Judge.  Affirmed.

Daniel Charles Motsinger, in pro. per., and William D. Farber, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Pursuant to a negotiated plea agreement, defendant and appellant, Daniel Charles Motsinger, pled no contest to negligent discharge of a firearm (Pen. Code, § 246.3, subd. (a), count 1), indecent exposure (Pen. Code, § 314, subd. (1), count 2) and reckless

1

driving while fleeing a police officer (Veh. Code, § 2800.2, subd. (a)). Pursuant to the plea agreement, the court sentenced defendant to two years of felony probation. After a probation officer filed a petition to revoke defendant's probation, defendant filed a motion to withdraw the plea, which the court denied. After defendant filed a notice of appeal, and counsel for Appellate Defenders, Inc., filed an amended notice of appeal, this court appointed counsel to represent defendant.

Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738, setting forth a statement of facts, a statement of the case, and identifying one potentially arguable issue: whether the court abused its discretion in denying defendant's motion to withdraw the plea.

Defendant was offered the opportunity to file a personal supplemental brief, which he has done. Defendant contends the court erred in denying his motion to withdraw the plea because he was coerced into entering it. We affirm.

## I. PROCEDURAL BACKGROUND

By information filed March 25, 2021, the People charged defendant with negligent discharge of a firearm (Pen. Code, § 246.3, subd. (a), count 1). On April 16, 2021, the court granted defendant's request to represent himself in four cases pending against him: two felony cases and two misdemeanor cases. On May 13, 2021, the People amended the information to add charges of indecent exposure (Pen. Code, § 314, subd. (1), count 2) and reckless driving while fleeing a police officer (Veh. Code, § 2800.2, subd. (a)).[1]

---

[1] It appears the amended information incorporated some of the charges against defendant from the other cases.

Prior to taking defendant's plea, the court noted that the plea form contained slashes where a defendant's initials would normally appear. The court stated, "Normally I require initials in the boxes on the right-hand side." Defendant responded, "Yeah, that's my mark or sign." The court replied, "That's your mark? There's an 'X.' When it's an 'X,' it's not applicable but that [slash] is, essentially you signifying you understand those paragraphs; is that right?" Defendant answered, "Yes."

Defendant later said of the plea, "Your Honor, it's not really voluntary." The court responded, "I gotta be convinced that this is what you want to do." Defendant replied that he wanted to fight his case and felt he should have been released on bail much earlier. The court concluded, "[B]ased on what you're telling me, I'm not inclined to go forward with the plea. . . . I have to be convinced that . . . you're entering plea agreement freely and voluntarily, knowingly and intelligently. . . . [¶] . . . [¶] . . . [B]ased on what I just heard from [defendant], I'm not inclined to go forward with the plea. [¶] [Defendant], I understand your concerns but I can't go forward based on what you're telling me, take the plea. [¶] . . . [¶] . . . I know there's a plea, but [defendant] is telling me he's essentially entering into the plea because he doesn't have any other choice, and that's not an okay answer."

Defendant said, "I need to be able to—I'm doing this out of my own—nobody is forcing me to do this. I'm doing this out of my own. . . ." The court interrupted, "You mean the plea?" Defendant replied, "Yes." The court directed the prosecutor and defendant to confer regarding a factual basis for the plea. Thereafter, the court explained the basic terms of the plea to defendant.

The court then noted that it needed to go over the specific terms of the plea agreement with defendant in open court to make sure defendant understood: "I have to ask you questions about it, and then I'll being asking the People questions and putting things on the record as far as the factual basis, and asking you if you agree to that."

The court then inquired of defendant, "I'm showing you a 3-page document titled Declaration By Defendant Re Change of Plea, it's got your name at the top. Do you recognize it?" Defendant responded, "Yes." The court asked, "I don't know if you can see it right here above where it says defendant's signature, can you see it from there?" Defendant stated, "No, but I signed it." The court then said, "I'm going to have the custody deputy show you all three pages. I'm gonna have you look at each page, the signatures on the third page, and then the other check marks in the boxes. And then I'll be asking you questions. [¶] For the record, the custody deputy is showing [defendant] the 3-page plea document." The court then asked defendant if he had looked at the document. Defendant said that he had.

The court asked if defendant had personally placed his signature on the third page. Defendant said that he had. The court stated, "And the defendant did not use initials to initial the boxes, and I went over that with him . . . . And, essentially, the paragraphs that didn't apply, he put an X. And I told him, 'My understanding, the ones with an X do not apply and the ones with the mark or the slash, that's essentially what we'd normally refer to as initials. That's basically how you put your initials by that slash mark; is that correct?' 'Correct' that's what the defendant responded." The court then inquired whether defendant's slashes next to each paragraph signified his "reading and

4

understanding [of] each paragraph." Defendant answered, "Yes." The court asked if "before signing and initialing the plea form, did you carefully go over both the printed and handwritten portions of the form?" Defendant said, "Yes." The court asked, "Did you go over everything on those three pages?" Defendant said, "Yes."

The court asked defendant, again, if he had gone "over it on your own and read everything, understand everything?" Defendant said that he had. The court asked a third time, "and do you understand everything on the plea forms, all three pages?" Defendant responded, "Yes." The court asked if defendant "[s]pecifically" understood "each of your constitutional rights and other rights enumerated on the form and all the penalties for the offense to which you are pleading as set forth on the plea document?" Defendant stated he did.

The court asked defendant if "anyone used any threats or violence against you to force you to plead no contest?" Defendant responded, "No." The court, again, went over all the terms of the plea agreement with defendant, all of which defendant indicated he understood.

Defendant then pled no contest to all three counts. The parties agreed to a factual basis as to each count.

The court found that "defendant has personally and orally entered this plea in open court; the plea was entered freely and voluntarily, knowingly and intelligently by the defendant . . . ." In return for his plea, as provided in the agreement, the court dismissed defendant's three remaining cases on the People's motion.

5

Defendant agreed that there was no legal cause to prohibit the court from pronouncing judgment. As provided in the plea agreement, the court sentenced defendant to two years of felony probation. Defendant signed and agreed to the terms and conditions of probation.

On June 11, 2021, a probation officer filed a petition to revoke defendant's probation for failure to comply with the terms of his probation. The officer alleged that during a search of defendant's home, officers found three boxes of ammunition and a shotgun barrel, both of which defendant was prohibited from possessing. Defendant was charged with a new felony offense, possession of ammunition by a prohibited person. (§ 30305, subd. (a)(1).) The court revoked defendant's probation.

On August 16, 2021, counsel for defendant filed a motion to withdraw the plea on the basis that, "At the time of the plea defendant was operating under ignorance and duress, overcoming the exercise of his free judgment." In a declaration attached to the motion, defendant asserted that he took the plea so that he could get out of jail for fear of contracting "Covid." At the hearing on the same date, the court ordered a copy of the reporter's transcript of the plea and continued the matter. On August 24, 2021, the People filed opposition to defendant's motion, arguing that defendant had signified on the plea agreement that he was not under threat or duress when he entered the plea.

On September 20, 2021, prior to testimony on defendant's motion to withdraw the plea, the court noted, "it's clear from the transcript—in fact, the Court stopped the change of plea colloquy when the defendant expressed some hesitation. And I told him—as is clear from the transcript—I'm not taking the plea. But nowhere in the transcript was

6

there ever a mention by the defendant of anything related to Covid, . . . which is what he's now bringing up in his declaration attached to the Motion to Withdraw the Plea, is that he was scared of Covid."

Defense counsel argued that if the court would "take a peek at the plea—if you'll look at his signature, right on his signature he put 'I'm doing this under duress.'" The court responded, "I'm looking at his signature. Where does it say, 'I'm doing this under duress?'" Defense counsel replied that to the right of defendant's signature were two initials.[2] The court said, "I see it now. So you're saying as a 'U' and a 'D' for standing for—[¶] . . . [¶]—'under duress?'"

The court noted, "Frankly, I didn't see the 'UD' and I never saw that meant 'under duress.' I said, 'Sir, on the third page above where it says 'defendant's signature' there's a signature there. Is that your signature?' 'Yes.' Did you personally place it there?' 'Yes.' [¶] And I continued it. At no time did he tell me, 'Yeah, that's my signature and I put UD next to it.'" "[W]hen I took this plea, no one told me that 'UD' was under duress. Defendant never said it or any of that sort."

Defendant testified at the hearing that he was concerned about the Covid epidemic while he was in jail awaiting trial. He entered the plea because being in jail was "torture." Defendant continued, "On the TV, they're saying, you know, they were talking about the Covid, it seemed like, all the time so I—I wanted out. And the main thing with

---

[2] Immediately to the right of defendant's signature on the plea agreement are the letters "UD."

7

the Covid was that I wouldn't possibly get a trial because the trial was, uh—what's it called—speedy trial was postponed because of Covid."

Defendant wrote "UD" on the plea agreement, meaning "'under duress.'" "I was quite certain that if I spelled it out, that I wouldn't get the plea." When asked if he was "feeling under duress?," defendant stated, "I believe so, yes." Defendant never explained to the court or the prosecutor the meaning of the letters "UD."

The court noted that "just writing down 'UD' does not make it that the defendant was under duress. The Court has to look at the plea colloquy." The court then started reading through the plea transcript line by line. The court observed that prior to entering the plea, defendant said, "'Nobody is forcing me to do this. I'm doing this out of my own.'" Defendant said that he had signed the plea. Defendant had placed his mark next to the paragraphs on the plea agreement.

The court noted that during the plea colloquy there "was no mention of Covid, no mention of safety concerns, no mention of being kept together with other inmates in what he felt was being unsafe. In fact, today on the stand, for example, although he mentioned Covid, he mentioned that he thought he was being tortured being in shackles and chains. [¶] So I don't find the defendant's claim that he took the plea because he was scared of Covid to be credible." The court found defendant had failed to meet his burden to withdraw the plea; the court denied the motion.

On October 21, 2021, defendant moved to dismiss his attorney. Defendant stated, "I can't take [it]. It's torture two days in a row. It's torture in these cuffs all day." On

8

October 25, 2021, the court denied defendant's *Marsden*[3] motion. The court then provided defendant with a *Faretta*[4] waiver form. After defendant completed the *Faretta* waiver form, the court noted defendant had "editorialized your *Faretta* writing, because the reason you are giving up your right to an attorney is because, 'My attorney lied to me and the judge would not fire him.'" The court stated it was not inclined to grant defendant's motion based on that language.

Defendant indicated he wished to represent himself at both the trial, on the new felony count, and the probation violation. After advising defendant of the risks and responsibilities of representing himself, the court granted defendant's motion to represent himself and continued the matter for trial on defendant's probation violation.

On November 8, 2021, the People offered defendant a plea deal, which defendant rejected. Defendant made a counteroffer, which the People rejected. In open court, the court filed defendant's notice of appeal from the order denying the motion to withdraw his plea. On November 19, 2021, counsel for Appellate Defenders, Inc., filed an amended notice of appeal on behalf of defendant challenging "the sentence or other matters occurring after the plea" and the validity of the plea itself. Counsel requested a certificate of probable cause, which the court granted.

---

[3] *People v. Marsden* (1970) 2 Cal.3d 118.

[4] *Faretta v. California* (1974) 422 U.S. 806.

## II.  DISCUSSION

Defendant maintains that the court coerced his plea by telling him it would not proceed with the case unless defendant took the plea agreement.  Defendant contends he signed the plea bargain "'UD,'" meaning "'Under Duress'" because he "was literally Under Duress when [the] plea was Taken."[5]  We disagree.

"At any time before judgment, or within six months after an order granting probation if entry of judgment is suspended, a trial court may permit a defendant to withdraw a guilty plea for 'good cause shown.'  [Citation]  'Mistake, ignorance or any other factor overcoming the exercise of free judgment is good cause for withdrawal of a guilty plea' under [Penal Code] section 1018 [citation], and section 1018 states that its provisions 'shall be liberally construed . . . to promote justice.'  A defendant seeking to withdraw a guilty plea on grounds of mistake or ignorance must present clear and convincing evidence in support of the claim.  [Citation.]  A trial court's decision whether to permit a defendant to withdraw a guilty plea under section 1018 is reviewed for abuse of discretion."  (*People v. Patterson* (2017) 2 Cal.5th 885, 894.)  "'We do not reweigh the evidence or [assess] witness credibility.'"  (*People v. Lopez* (2021) 66 Cal.App.5th 561, 574.)

First, the court did not compel defendant's plea.  When the court stated it would not proceed, it meant it would not take defendant's plea while defendant was indicating

---

[5]  Nowhere in defendant's supplemental brief does he mention anything about the "Covid Pandemic" being a coercing factor in the entry of his plea, which was the basis for his motion to withdraw as recounted in his declaration.

that it was involuntary: "I understand your concerns but I can't go forward based on what you're telling me, take the plea." Only after defendant, who was representing himself, informed the court that no one was forcing him to take the plea, that he was entering into it voluntarily, did the court proceed with the plea. Defendant said, "nobody is forcing me to do this. I'm doing this out of my own."

Second, defendant repeatedly indicated that he was under no coercion at the time the court took his plea. Defendant made his "mark" in the box adjacent to the paragraph in the plea agreement reading, "No one has used any force or violence or threats or menace or duress or undue influence of any kind on me or anyone dear to me to get me to plead guilty/no contest as indicated." Defendant informed the court that by making his mark in the boxes, he was signifying that he had read and understood everything in the adjacent paragraphs on all three pages of the plea form. Defendant signed the plea form, reflecting, under penalty of perjury, that his signifying marks in the boxes on the form were true and correct. Defendant told the court he had signed the plea form.

Defendant said, "nobody is forcing me to do this. I'm doing this out of my own." Defendant informed the court he had read everything on all three pages of the plea form and understood everything. The court specifically asked defendant if "anyone used any threats or violence against you to force you to plead guilty?" Defendant responded, "No."

The court found that "defendant has personally and orally entered this plea in open court; the plea was entered freely and voluntarily, knowingly and intelligently by the

11

defendant . . . ." Defendant agreed that there was no legal cause to prohibit the court from pronouncing judgment.

Third, defendant cannot surreptitiously insert a cryptic cipher into the plea agreement secretly signifying that he was under duress, all the while contradicting the purported meaning of that cipher in open court as discussed above. As the court noted prior to ruling on the motion to withdraw the plea, it neither saw the letters "UD" on the plea form nor would it have understood that they meant defendant was entering his plea under duress if it had: "Frankly, I didn't see the 'UD' and I never saw that meant 'under duress.'. . . [¶] . . . [¶] [W]hen I took this plea, no one told me that 'UD' was under duress. Defendant never said it or any of that sort."

Indeed, defendant candidly testified that when he wrote "UD" on the plea agreement, he "was quite certain that if [he] spelled it out, that [he] wouldn't get the plea." Defendant testified that he never explained to the court or the prosecutor the meaning of the letters, "UD."

The court noted that "just writing down 'UD' does not make it that the defendant was under duress." The court determined that defendant's testimony that he was coerced into entering the plea was not credible. After a review of the plea colloquy, the court noted that everything defendant conveyed to the court when entering his plea reflected that defendant was doing so freely and voluntarily. The court acted within its discretion in denying defendant's motion to withdraw the plea.

## III.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER _____
                                                                        J.

We concur:

RAMIREZ _____
                    P. J.

RAPHAEL _____
                    J.