Filed 2/8/23  P. v. Falcon CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CLAUDIA FALCON,<br><br>    Defendant and Appellant. | F084398<br><br>(Super. Ct. No. F20901741)<br><br><br>**OPINION** |

-ooOoo-

<u>**THE COURT**</u>\*

APPEAL from a judgment of the Superior Court of Fresno County.  Monica R. Diaz, Judge.

Martin Baker, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Hill, P. J., Poochigian, J. and Meehan, J.

Appointed counsel for defendant Claudia Falcon asked this court to review the record to determine whether there are any arguable issues on appeal. (*People v. Wende* (1979) 25 Cal.3d 436.) Defendant was advised of her right to file a supplemental brief within 30 days of the date of filing of the opening brief. Defendant responded, contending she should have been allowed to withdraw her no contest plea because she was coerced into accepting the plea when the trial court and her attorney both told her she would await trial for many months due to the pandemic but would be released immediately if she pled. She claims she is innocent of the crimes and is now unable to find employment due to her felony conviction. Finding no arguable error that would result in a disposition more favorable to defendant, we affirm the judgment.

## BACKGROUND

We quote the following information contained in the probation officer's report and taken from the Fresno Police Department crime report:

> "The 40-year-old Confidential Victim (CV) and [defendant] were in a prior romantic relationship for approximately six[]months. They have no children in common but were residing together at the time of the instant offense.
>
> "On March 4, 2020, the CV and [defendant] got into a verbal argument earlier in the day, after she accused him of making stops at different places on his way home from work. After the argument, the two left the residence.
>
> "The CV later returned home with a female friend. After [defendant] returned home later that evening, she attempted to force her way into the residence via the back window. After [defendant] had broken the screen on the window, the CV walked to the front door and allowed her inside.
>
> "After an argument ensued, [defendant] grabbed a hammer and swung it at the CV, striking him one time on the right knee. The CV managed to take the hammer away from [defendant], at which time she collected her things, threatened to call 911 and left the residence.
>
> "At approximately 10:13 p.m., officers arrived at the confidential address and contacted [defendant], who was outside near her vehicle. [Defendant]

2.

told officers the CV had punched her in the chin. During the contact, officers detected a smell of alcohol emitting from [defendant's] person. She admitted prior to arriving back home, she had consumed one tall can of beer.

"[Defendant] told officers she was involved in a verbal argument with the CV earlier in the day and they both left the residence after the argument was over. After she returned home later that evening, she was unable to get inside because the door was locked, and the CV would not answer it. [Defendant] indicated she went to the back of the residence to go through the rear window and discovered the CV in his bedroom with another female. [Defendant] stated she walked back to the front of the residence, at which time the CV allowed her inside.

"[Defendant] claimed the CV struck her twice on both sides of her chin with his right and left fists. This caused her to fall back and break the heel of her boot. [Defendant] stated as she was on the ground, the CV threw her clothes at her and told her to leave. [Defendant] indicated she walked out of the residence and called 911.

"Officers then contacted the CV, who provided a statement. He denied ever striking [defendant] with closed fists but stated he might have pushed her when he was taking the hammer away from her.

"Officers also interviewed the CV's sister and his female friend, who were present for the argument. They both indicated they observed [defendant] grab the hammer and attempt to hit the CV, who was able to take it away from her.

"After obtaining information about the hammer, [defendant] was asked about it. She stated she reached for the hammer, which was on a shelf; however, the CV was able to grab it first. [Defendant] indicated she tried to take the hammer away from the CV, which is when he punched her in the chin. When she was questioned how the CV could punch her with both fists if he was holding a hammer, [defendant] became flustered and confused before stating he threw the hammer on the bed in the living room and then proceeded to punch her.

"Photographs were taken of the CV's legs, with no visible injuries noted. The 13-inch[-]long hammer was also located and photographed. The CV declined an Emergency Protective Order (EPO).

"[Defendant], who had slight redness on her lower left cheek, near the jawline, was taken into custody and booked into the Fresno County Jail."

3.

On March 6, 2020, defendant was charged with assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1);[1] count 1) and misdemeanor domestic battery (§ 243, subd. (e)(1); count 2).

On March 20, 2020, defendant pled no contest to assault with force likely to cause great bodily injury (§ 245, subd. (a)(4)), a lesser related offense to count 1, in return for immediate release from jail, three years' probation, and dismissal of count 2.

On August 28, 2020, defendant informed the trial court she wished to withdraw her no contest plea.

On October 1, 2021, defendant filed a motion to withdraw her plea. In an attached declaration, she stated her plea was made under duress because the trial court and defense counsel both told her if she chose to go to trial, she would remain in jail for another six months or until the COVID-19 pandemic ended; if she accepted the plea, she would be released immediately. She felt she had no choice but to accept the plea even though she was innocent of the crimes.

On March 24, 2022, the trial court heard and denied defendant's motion, stating it found nothing in the record to support her claim of coercion. The court stated:

> "All right. Like I stated, I did review the motion, the attached declaration of the defendant, as well as I did review the Change of Plea Form transcript that is part of the record in this case. I understand that the defendant has advised or declared that she felt coerced to enter a plea on the case, as she was given an opportunity to be released from custody at the time of the plea and she didn't want to risk remaining in jail [a]waiting trial for up to six months as she stated was advised to her by the court, as well as her attorney. Thus, she advised that she took the deal. In reviewing the Change of Plea Form transcript it appears to be a fairly straightforward change of plea. The Court didn't find [any]thing on the record regarding the length of time—well, regarding any of the information provided through the defendant in her declaration in support of this motion. In going through the Change of Plea Form the Court specifically asked the defendant if she's had any threats or promises or otherwise to get her to enter into her

---

[1]     All statutory references are to the Penal Code.

change of plea. She confirmed that nothing was made. The Court proceeded to go through the Change of Plea Form, the defendant's rights, and consequences of her plea, which the defendant stated she understood. At no point did she state she was only doing this because otherwise she will be forced to be in custody for an extended period of time.

"At this point the Court is not finding sufficient cause or sufficient basis to allow the defendant to withdraw her plea. The motion is denied."

The court then sentenced defendant to three years of probation, including community service and a batterer's intervention program, with credit for time served.

On May 23, 2022, defendant filed a notice of appeal and the trial court granted her request for a certificate of probable cause.

## DISCUSSION

"At any time before judgment, or within six months after an order granting probation if entry of judgment is suspended, a trial court may permit a defendant to withdraw a guilty plea for 'good cause shown.' (§ 1018.) 'Mistake, ignorance or any other factor overcoming the exercise of free judgment is good cause for withdrawal of a guilty plea' under section 1018 [citation], and section 1018 states that its provisions 'shall be liberally construed … to promote justice.' A defendant seeking to withdraw a guilty plea on grounds of mistake or ignorance must present clear and convincing evidence in support of the claim. [Citation.] A trial court's decision whether to permit a defendant to withdraw a guilty plea under section 1018 is reviewed for abuse of discretion." (*People v. Patterson* (2017) 2 Cal.5th 885, 894.) " 'We do not reweigh the evidence or [assess] witness credibility.' " (*People v. Lopez* (2021) 66 Cal.App.5th 561, 574.)

Having undertaken an examination of the entire record, we find no evidence to support the conclusion that defendant did not enter a knowing, intelligent, and voluntary plea. Thus, the trial court acted within its discretion in denying defendant's motion to withdraw the plea. Further, we find no evidence to support any other arguable error that would result in a disposition more favorable to defendant.

5.

## <u>DISPOSITION</u>

The judgment is affirmed.