Filed 10/17/23  P. v. Hermosillo CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. MANUEL EFRIN HERMOSILLO, Defendant and Appellant. | D081714 (Super. Ct. No. SCD164101) |

APPEAL from an order of the Superior Court of San Diego County, Howard H. Shore, Judge.  Affirmed.

Laura Arnold, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Adrian R. Contreras and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

In 2002, Manuel Efrin Hermosillo pled guilty to residential burglary, assault with a firearm, and misdemeanor use of a controlled substance. Hermosillo now appeals from a January 2023 order denying his motion to

vacate his criminal convictions pursuant to Penal Code[1] section 1473.7, subdivision (a)(2). He contends that he demonstrated both error and prejudice within the meaning of section 1473.7 because (1) he did not meaningfully understand the immigration consequences of his pleas, and (2) he would not have accepted the pleas had he properly understood those consequences.

Based on our independent review of the documentary evidence and records, we conclude that Hermosillo has failed to meet his burden of demonstrating that he did not meaningfully understand the immigration consequences of his guilty pleas. Accordingly, we affirm the order without deciding the merits of his argument regarding prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Hermosillo's Ties to the United States*

Hermosillo's family moved from Mexico to the United States when he was two years old. His father became a lawful resident. In 1995, the Immigration and Naturalization Service approved his father's Immigrant Petition for a Relative as the first step in obtaining lawful permanent resident status for Hermosillo. Hermosillo was not eligible to file an adjustment of status application at that time.

Hermosillo grew up in San Diego with his parents and siblings. He attended elementary, middle, and high school in San Diego, although he did not graduate from high school. When Hermosillo was 18 years old, police arrested him in connection with a residential break-in and shooting that took place when he was 17. After being found unfit for juvenile court, he was transferred to adult court.

---

1    All further statutory references are to the Penal Code unless otherwise indicated.

B. *Charges and Convictions*

In December 2001, the District Attorney filed an information charging Hermosillo with felony residential burglary (Pen. Code, § 459), two counts of felony assault with a firearm (Pen. Code, § 245, subd. (a)(2)), and one count of misdemeanor use and being under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (a)). The information also alleged that Hermosillo personally used a firearm in the commission of the alleged felonies. (Pen. Code, § 12022.5, subd. (a)(1).) Hermosillo faced up to 16 years in state prison if convicted for the first count alone. Hermosillo proceeded to trial by jury in March 2002.

During his trial, Hermosillo agreed to plead guilty to count 4 of the information: misdemeanor use and being under the influence of a controlled substance. Hermosillo completed and signed a plea form and specifically initialed a box which stated that if he was not a citizen of the United States, a guilty plea "can or will result in removal or deportation, exclusion from admission to this country, denial of amnesty and denial of naturalization." His defense counsel also signed or initialed the plea form, attesting that she "personally read and explained" the contents of the plea form, had discussed "the consequences of this plea" with the defendant, and that Hermosillo had "filled in and initialed each item to acknowledge his . . . understanding and waivers." And the trial judge signed the form, stating that he had "questioned the defendant/defendant's attorney" concerning the plea and found that "the defendant understands . . . the consequences of the plea and admissions."

On March 13, 2002, the trial court declared a mistrial and dismissed the jury after it deadlocked on the remaining charges. One hour and eleven minutes later, Hermosillo's defense counsel informed the court that

3

Hermosillo had agreed to plead guilty to count one, residential burglary, and count two, assault with a firearm. The District Attorney agreed to dismiss the remaining charges and stipulated to a four-year sentence allowing Hermosillo to become eligible for parole after two years.

Hermosillo completed and signed another plea form for these charges. On this plea form, he initialed another box acknowledging that he understood the mandatory immigration consequences of his plea:

> "I understand that if I am not a U.S. citizen, this plea of Guilty/No Contest may result in my removal/deportation, exclusion from admission to the U.S. and denial of naturalization. Additionally, if this plea is to an "Aggravated Felony" listed on the back of this form, then I *will* be deported, excluded, from admission to the U.S., and denied naturalization." (Emphasis added.)

The back page of the plea form defined "**AGGRAVATED FELONIES**" in bold, capitalized headings. The first sentence read:

> **"ANY CONVICTION OF A NON-CITIZEN FOR AN 'AGGRAVATED FELONY' AS DEFINED UNDER 8 U.S.C. 1101(a)(43) <u>WILL</u> RESULT IN REMOVAL/DEPORTATION, EXCLUSION, AND DENIAL OF NATURALIZATION."**

The back page of the form also provided a non-exhaustive list of aggravated felonies. The first two entries were: "<u>**ANY CRIME OF VIOLENCE**</u>" and "<u>**BURGLARY.**</u>"

Hermosillo's defense counsel signed the plea form, attesting that she had discussed with Hermosillo "the consequences of this plea, including any immigration consequences," and she had personally observed him fill in and initial each item to acknowledge his understanding. The trial judge also signed the plea form, indicating he questioned Hermosillo and his counsel and found that Hermosillo understood "the nature of the charges and the consequences of the plea and admissions . . . ." The record contains no

4

transcript of the plea hearing, which occurred over 20 years ago, because it has been destroyed on order of the court pursuant to Government Code section 69955, subdivision (e).

C.    *Sentencing and Deportation*

In April 2002, pursuant to the stipulated term under the plea agreement, the trial court sentenced Hermosillo to the middle term of four years for count 1, three years for count 2, and 90 days for count 3, all to run concurrently for a total of four years with 306 days in credit for time served.

Upon release from custody in 2003, Hermosillo received a Notice to Appear before a federal immigration judge in removal proceedings because of his conviction for residential burglary.  Hermosillo hired an immigration attorney and filed an application for a waiver and an adjustment of status under the Immigration and Naturalization Act.

In April 2004, a federal immigration judge denied Hermosillo's applications and ordered his removal to Mexico because of his aggravated felony burglary conviction, making him deportable under title 8 United States Code section 1227(a)(2)(A)(iii).

D.    *Motion to Vacate Convictions*

Over 18 years later, in October 2022, Hermosillo moved to vacate his convictions under section 1473.7, subdivision (a)(1).  In this motion, Hermosillo argued that he was entitled to relief because, at the time of his plea, he did not meaningfully understand the adverse immigration consequences of his convictions, and he would not have pled guilty if he had realized he would be deported.  For support, he relied on his own declaration and a declaration from immigration attorney Daniel Castaneda describing potential alternative, immigration-neutral charges to which Hermosillo could have tried to negotiate a plea.

5

Hermosillo alleged that his original defense counsel convinced him to plead guilty right after the jury deadlocked on his felony charges, saying "I'm not going through this again." Hermosillo claimed that his attorney "put pressure" on him to plead guilty to the remaining charges and warned only that he would "be convicted and go to prison for many more years" if he faced trial a second time.

Hermosillo stated that after he initially declined to plead guilty, opting instead to go to trial again, Hermosillo's attorney conferred with his mother in the courthouse and then informed him that his mother believed he should plead guilty. His attorney confirmed the prosecutor would accept a deal to plead to the two serious felonies with a sentence of four years in prison. According to Hermosillo, his attorney told him that the two strikes would "never become a problem" if he moved to Las Vegas, reminding him that "[his] own mother agree[d] with her."[2] Hermosillo claimed that days later, his mother told him by phone that his defense attorney "kind of scared her" into thinking that Hermosillo should accept the plea deal.

According to Hermosillo, his defense attorney never advised him, and he consequently never knew, that his misdemeanor drug conviction would have adverse immigration consequences or that he would be deported and ineligible for permanent residency. He stated that defense counsel never asked him about his immigration status. According to Hermosillo, his defense counsel also did not explain that his felony convictions for burglary

---

[2]    Nevada enacted a three-strikes law in 1995. (Nev. Rev. Stat. Ann. § 207.010 et seq.) As of 2002, when Hermosillo entered his pleas, a strike prior under Nevada law included any prior conviction "whether in this state or elsewhere, of any crime which under the laws of the situs of the crime or of this state would amount to a felony. . . ." (Nev. Rev. Stat. Ann. § 207.010(1)(a) & 1(b).)

6

and assault would result in "really bad immigration consequences" because she "was so focused on avoiding a second trial[.]" Hermosillo alleged that if he had been made aware of the immigration consequences of the guilty plea, he "would have chosen to go to trial again."

Hermosillo's declaration did not explain why he initialed the boxes on the plea forms stating that he understood the immigration consequences, including mandatory deportation and exclusion from the United States for the felony guilty plea. Although Hermosillo asserted that his mother was involved in the felony plea discussions with defense counsel, and that defense counsel failed to advise her of the immigration consequences as well, he submitted no supporting declaration from his mother and no explanation for its absence. Hermosillo also submitted no declaration from his defense counsel and no evidence that anyone attempted to contact her for information regarding the pleas or a supporting declaration.

The People opposed Hermosillo's motion. The People first argued that Hermosillo's motion was untimely because it was not filed with reasonable diligence under section 1473.7, subdivision (b)(2). Second, the People asserted that Hermosillo had failed to meet his burden of proving beyond a preponderance of the evidence that an error had occurred. For support, the People cited the two separate plea forms signed by Hermosillo attesting that he had been advised of and understood the consequences of his pleas, including the mandatory immigration consequences for his felony plea. The People argued that the only evidence to the contrary proffered by Hermosillo consisted of his own "self-serving allegations." Lastly, the People argued that Hermosillo failed to meet his burden to establish prejudice.

The trial court held a hearing on Hermosillo's motion on January 17, 2023. The court observed that "only the declaration of the defendant"

7

supported Hermosillo's contention that he did not understand the immigration consequences of his plea, and that his declaration "conflict[ed] with his statements in the plea form."  The court offered to set an evidentiary hearing "if either side wishe[d] to produce additional evidence."  After the People declined, and Hermosillo's counsel did not object or request an evidentiary hearing, the court took the matter under submission.  Accordingly, Hermosillo did not testify himself and did not call or subpoena his original defense counsel, or any other witness, to testify.

After taking the matter under submission, the court issued a written order denying Hermosillo's motion based on the papers.  While it accepted the motion as timely, the court found that Hermosillo did not meet his burden of proof in part because the "plea documents make it clear that defendant was facing mandatory deportation" and "[a]ny representations by the defendant to the contrary lack credibility."  "Unlike many of the published decisions addressing Section 1473.7, the exhibits submitted here [did] not include a declaration by defendant's trial attorney or other corroborating evidence . . . ."

## DISCUSSION

A.    *Standard of Review*

We independently review on appeal a challenge to a criminal conviction for being legally invalid due to prejudicial error within the meaning of section 1473.7.  (*People v. Espinoza* (2023) 14 Cal.5th 311, 316, 319 (*Espinoza*).)  Under this standard, " 'an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.' " (*Id*. at pp. 319–320.)

"[F]actual determinations that are based on the credibility of witnesses the [superior court] heard and observed are entitled to particular deference, even though courts reviewing such claims generally may reach a different

8

conclusion [from the trial court] on an independent examination of the evidence . . . even where the evidence is conflicting." (*People v. Vivar* (2021) 11 Cal.5th 510, 527 (*Vivar*), internal quotation marks omitted.) In this case, however, neither party requested an evidentiary hearing after the trial court offered to hold one, and the trial court therefore decided the matter on the papers. " '[T]he trial court and this court are in the same position in interpreting written declarations' when reviewing a cold record in a section 1473.7 proceeding." (*Id.* at p. 528.) Accordingly, we will independently determine whether Hermosillo met his burden of proof under section 1473.7.

B.    *Governing Legal Principles*

Section 1473.7 allows noncitizens no longer in criminal custody to petition to vacate a conviction if they can establish the conviction is " 'legally invalid due to prejudicial error damaging [their] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence.' " (§ 1473.7, subd. (a)(1); *Espinoza, supra*, 14 Cal.5th at p. 316.) The Legislature enacted section 1473.7 "to codify *Padilla v. Kentucky* [(2010) 559 U.S. 356] and related California case law and to encourage the growth of such case law in furtherance of justice[,]" recognizing that "[t]he immigration consequences of criminal convictions have a particularly strong impact in California." (§ 1016.2, subds. (g), (h); see Stats. 2018, ch. 825, § 1, subd. (c); see also *People v. Lopez* (2022) 83 Cal.App.5th 698, 703 (*Lopez*).) Interpreting section 1473.7, the Supreme Court has elaborated that "when long-standing noncitizen residents of this country are accused of committing a crime, the most devastating consequence may not be a prison sentence, but their removal and exclusion from the United States." (*Vivar, supra*, 11 Cal.5th at p. 516.)

9

As the moving party, the petitioner in a section 1473.7 proceeding bears the burden of proof by a preponderance of the evidence. (§ 1473.7, subd. (e)(1); *Vivar, supra,* 11 Cal.5th at p. 517.) The petitioner must prove two elements. (*Espinoza, supra*, 14 Cal.5th at p. 319.) First, he must "show that he did not meaningfully understand the immigration consequences of his plea." (*Ibid.*) A defendant's own subjective error may provide a basis for relief. (*People v. Mejia* (2019) 36 Cal.App.5th 859, 866; see also *People v. Alatorre* (2021) 70 Cal.App.5th 747, 769.) "Next, the defendant must show that his misunderstanding constituted prejudicial error. '[P]rejudicial error . . . means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences.' " (*Espinoza, supra*, 14 Cal.5th at p. 319.)

A defendant seeking to withdraw his plea based on inadequate advisement of immigration consequences must "corroborate such assertions with objective evidence." (*Vivar, supra*, 11 Cal.5th at p. 530, internal quotation marks omitted.) "Objective evidence includes facts provided by declaration, contemporaneous documentation of the defendant's immigration concerns or interactions with counsel, and evidence of the charges the defendant faced." (*Espinoza, supra*, 14 Cal.5th at p. 321.) "[N]o specific kind of evidence is a prerequisite for relief," but "[t]he more robust and inclusive a record, the greater the opportunity for effective persuasion and meaningful judicial review." (*Id.* at p. 325.)

C.   *Hermosillo Failed to Meet His Burden of Establishing that He Did Not Meaningfully Understand the Immigration Consequences of His Felony Guilty Plea*

Hermosillo contends he sufficiently "demonstrated that he did not meaningfully understand the immigration consequences of pleading guilty"

10

based on his own declaration. Exercising our independent judgment, we conclude that the trial court's ruling was correct.

As noted, Hermosillo signed both plea forms and initialed boxes on both forms indicating that he understood the immigration consequences of his pleas. His attorney also signed or initialed both plea forms, indicating that she had discussed the consequences of the pleas with Hermosillo, including the immigration consequences of the felony plea. And the trial judge also signed both plea forms, stating that he had questioned Hermosillo and his counsel concerning the pleas and finding that Hermosillo understood the consequences.

The felony plea form explicitly advised Hermosillo that his guilty plea would have mandatory immigration consequences. Hermosillo signed the form and initialed the boxes, including a box stating that "if this plea is to an 'Aggravated Felony' listed on the back of this form, then I *will be* deported, excluded from admission to the U.S., and denied naturalization." (Emphasis added.) The back of the form stated in capital, bold, underlined letters that aggravated felonies "**WILL**" result in deportation and included "**ANY CRIME OF VIOLENCE**" and "**BURGLARY**" where the term imposed was at least one year. Hermosillo's defense counsel also signed or initialed the plea form, attesting that she had discussed with Hermosillo "the consequences of this plea, including any immigration consequences," and she had personally observed him fill in and initial each item to acknowledge his understanding.

These plea forms contradict Hermosillo's declaration that he did not understand the immigration consequences of his guilty pleas. Moreover, his declaration provides no explanation why he signed and initialed the plea forms indicating that he understood the immigration consequences or why he

11

purportedly did not understand what he was initialing and signing. Hermosillo grew up in San Diego since he was two years old and attended local schools. He was fluent in English and did not require a translator or interpreter at any point during the proceedings.

In his briefing, Hermosillo relies on the fact that the back page of the felony plea form defining aggravated felonies did not include its own separate box for him to initial. He asserts that in these circumstances, "it would be entirely unreasonable to assume that [he], on his own, read and understood everything written on the reverse side of the signature page of the plea form." But even in his own declaration, Hermosillo did not assert that he failed to read or understand the back page of the felony plea form. As noted, Hermosillo initialed the box on the front page explicitly stating that he understood the mandatory immigration consequences for pleading guilty "to an 'Aggravated Felony' *listed on the back of this form . . . .*" (Italics added.) Hermosillo also signed a line on the form stating under penalty of perjury that he had "read, understood, and initialed each item above and any attached addendum, and everything on the form and any attached addendum is true and correct." And his attorney also signed or initialed a statement stating that she had advised him of "any immigration consequences."

We recognize that generic form statements and warnings on plea forms are not necessarily dispositive. (See *People v. Patterson* (2017) 2 Cal.5th 885, 895–897; *Lopez, supra,* 83 Cal.App.5th at p. 716.) "Even where the form says that the defendant 'will' be deported, it does not substitute for the advice of counsel, and it is not a categorical bar to relief." (*People v. Manzanilla* (2022) 80 Cal.App.5th 891, 906 (*Manzanilla*); see also *People v. Lopez* (2021) 66 Cal.App.5th 561, 578; *People v. Curiel* (2023) 92 Cal.App.5th 1160, 1175 (*Curiel*).)

But in those cases, other objective evidence—such as attorney notes, oral testimony, or affirmative actions taken by defendants after their convictions—substantiated the defendant's version of events.  (See *Manzanilla, supra,* 80 Cal.App.5th at p. 910 [rejecting claim that a defendant's initials and signature on a plea form conclusively showed he subjectively understood he would be deported and stating that this "has been rejected by numerous courts *where there is contemporaneous evidence to the contrary . . . .*"  (Emphasis added.)].)

In *Curiel*, for example, the Second District recently found corroborating evidence sufficient to overcome a defendant's signed acknowledgement that her plea *would* mandate deportation.  (*Curiel, supra,* 92 Cal.App.5th at pp. 1177–1178.)  There, the defendant had signed a plea form stating, "I understand that if I am not a citizen of the United States, I *must* expect my plea of guilty or no contest *will* result in my deportation . . . ."  (*Id.* at p. 1165.)  Curiel's section 1473.7 motion relied heavily on her own declaration to support her claim that she did not properly understand those immigration consequences.  (*Id.* at p. 1167.)  She alleged that she had relied on her defense counsel's representations that if she avoided jail time, she could avoid deportation.  (*Ibid.*)

Critically, however, other objective evidence corroborated Curiel's account.  (*Curiel, supra,* 92 Cal.App.5th at pp. 1177–1178.)  The trial court held an evidentiary hearing on her petition, at which both defendant and her original defense counsel testified.  (*Id.* at pp. 1168–1171, 1176–1177.)  On appeal, the court found that the testimony of Curiel's defense counsel "corroborated the statements in Curiel's declaration" and confirmed that the advice she received regarding the immigration consequences of her plea "was inadequate and incomplete."  (*Id.* at p. 1176.)

13

Here, Hermosillo put forth no comparable evidence corroborating the claims made in his declaration. He provided no declaration or testimony from his original defense counsel and no evidence that anyone even attempted to contact her to provide information or supply a supporting declaration. (Cf. *Espinoza, supra,* 14 Cal.5th at p. 325 ["Both the district attorney and Espinoza's counsel represented to the court that they tried, without success, to contact the attorney who represented Espinoza at the time his plea was entered"].) Hermosillo also provided no corroborating declaration from his mother. In his own declaration, Hermosillo asserted that his defense counsel spoke with his mother in the courthouse after the jury had deadlocked, at the time of the second plea. His defense counsel allegedly reported to Hermosillo that his mother believed he should plead guilty. Hermosillo also declared that a couple of days later, his mother explained over the phone that his defense counsel "kind of scared her" into thinking that Hermosillo should take the plea deal and supposedly did not inform her "of any bed [*sic*] immigration consequences." But Hermosillo submitted no declaration from his mother corroborating his own hearsay assertions about her interactions with defense counsel, and he provided no explanation for the absence of such a declaration. And Hermosillo also did not request an evidentiary hearing on his petition, even after the trial court expressed skepticism about his "self-serving" declaration and offered to hold a hearing "if either side wishe[d] to produce additional evidence."

The other evidence cited by Hermosillo does not corroborate his claims regarding the immigration consequences of his pleas. He relies most heavily on the circumstances surrounding his misdemeanor drug plea. He contends that his defense counsel: (1) allowed him to plead guilty to the drug charge even though the prosecution had already decided not to pursue it;

14

(2) mistakenly filled out the plea form to indicate a violation of Health and Safety Code section 11350, subdivision (a), rather than Health and Safety Code section 11550; and (3) failed to sign the plea form and wrote the incorrect maximum sentence of six months. But none of these points has any direct bearing on Hermosillo's understanding of the immigration consequences of his guilty pleas. On this sparse record, we cannot find any deficient performance by defense counsel without anyone having provided her with an opportunity to explain or refute Hermosillo's accusations. And even assuming she made any of these alleged mistakes regarding the *misdemeanor* drug plea, they would not logically establish that Hermosillo did not understand the immigration consequences of his *felony* plea. Notably, Hermosillo points to no similar errors on his felony plea form, which was completed several days later, even though it was these aggravated felony convictions that carried the mandatory consequences resulting in his deportation, exclusion from the United States, and ineligibility for naturalization.

In his opening brief, Hermosillo argues that "in light of [his] youthfulness and utter lack of experience with the criminal justice system, it is highly probable that [he] did not actually read the language on the [plea] forms, but rather, trusted that his attorney was telling him what he needed to know." But Hermosillo made no such claim in his sworn declaration. He did not assert that he failed to read the plea forms before he initialed and signed them, nor did he claim that he read them but misunderstood their meaning. We will not find error based on assumptions of fact not supported by Hermosillo's own declaration.

Even in his declaration, Hermosillo did not definitively state that his attorney did not advise him of the specific immigration consequences of his

aggravated felony convictions. He merely stated that defense counsel never told him the felony plea "would have really bad immigration consequences." But even if defense counsel did not characterize the immigration consequences as "really bad," that does not necessarily negate her attestation on the plea form that she did advise him of those consequences. And even if defense counsel did not ask Hermosillo about his immigration status, as he claimed in his declaration, that does not necessarily establish that he or his family members did not tell her of his immigration status. As worded, therefore, Hermosillo's declaration did not explicitly refute what he and his defense counsel represented by initialing and signing the plea forms.

A defendant who is advised that he *will* be deported as a result of his guilty plea "is not entitled to simply ignore the admonitions he was given about the consequences of the plea, and argue that he unilaterally assumed he would be treated in direct contravention of what he was advised orally and in writing." (*People v. Abdelsalam* (2022) 73 Cal.App.5th 654, 663 (*Abdelsalam*).) In *Abdelsalam*, the court affirmed the conviction of a defendant who had signed a plea form stating that if he was not a citizen, he "*must*" expect his plea "*will*" result in deportation. (*Id.* at p. 659, original italics.) The defendant, his defense counsel, and the trial court had all signed the plea form, attesting that immigration consequences had been discussed and understood. (*Id.* at pp. 659–660.) The trial court orally advised Abdelsalam that his plea would result in deportation, and Abdelsalam responded that he understood and would "wait for immigration." (*Id.* at p. 660.) But Abdelsalam later submitted a section 1473.7 motion and supporting declaration claiming that he was not advised of the mandatory immigration consequences of the plea. (*Id.* at pp. 660–661.)

16

On appeal from an order denying the motion, the court found that the only available evidence aside from Abdelsalam's declaration—the plea forms and transcript—showed that Abdelsalam was fully advised of the immigration consequences of his plea. (*Abdelsalam*, *supra*, 73 Cal.App.5th at pp. 663–666.) Based on its own independent judgment, the Court of Appeal concluded that Abdelsalam's declaration alone did not sufficiently establish that he did not meaningfully understand those consequences. (*Ibid.*) The court concluded: "The claim must be corroborated by evidence beyond the defendant's self-serving statements." (*Id.* at p. 664.)

As in *Abdelsalam*, we find that Hermosillo did not meet his burden of establishing by a preponderance of the evidence that he did not "meaningfully understand" the immigration consequences of his guilty pleas. (§ 1473.7, subd. (a)(1).) More specifically, he did not meet his burden of overcoming the facts stated on the guilty plea forms, signed under penalty of perjury by himself, and signed or initialed by his defense counsel and the trial judge. Because Hermosillo failed to corroborate his assertions with objective evidence (*Vivar*, *supra*, 11 Cal.5th at p. 530), we conclude that Hermosillo's declaration is inadequate under these circumstances to establish that he did not meaningfully understand the consequences which he previously acknowledged understanding—that his pleas would subject him to mandatory deportation, exclusion from admission to the United States, and denial of naturalization.

Because the evidence is insufficient to establish that an error occurred, we need not address the prejudice prong of the section 1473.7 analysis.

## DISPOSITION

The order is affirmed.

BUCHANAN, J.

WE CONCUR:

HUFFMAN, Acting P.J.

CASTILLO, J.