Filed 2/28/24  P. v. Robles CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE LUIS GAMBOA ROBLES,<br><br>    Defendant and Appellant. | D081947<br><br><br><br>(Super. Ct. No. SCD145319) |

APPEAL from an order of the Superior Court of San Diego County, Howard H. Shore, Judge.  Affirmed.

William J. Baker, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel Rogers, Alana R. Butler, and Steve Matthew Mulford, Deputy Attorneys General, for Plaintiff and Respondent.

Jose Luis Robles appeals from a 2023 order denying his motion to vacate his 2000 criminal convictions for drug offenses pursuant to Penal

Code[1] sections 1473.7 and 1016.5.  Robles contends he is entitled to relief under section 1473.7 because (1) he did not meaningfully understand the immigration consequences of his plea, and (2) he would not have accepted the plea had he properly understood those consequences.  Based on our independent review, we conclude Robles has failed to meet his burden of demonstrating that he did not meaningfully understand the immigration consequences of his guilty plea.  Accordingly, we need not decide the merits of his argument regarding prejudice.

Robles also argues remand is necessary because the trial court did not address section 1016.5.  However, he makes no effort to show that his plea should have been set aside on that ground.  We conclude that the advisement required under section 1016.5 was properly given.

We affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

A.    *Plea and Sentence*

Robles is a Mexican citizen.  He moved to the United States in 1985, when he was 21 years old.  At the time of his motion to set aside his plea, he was 59 years old.  His mother and his then 30-year-old son were United States citizens.  His primary language was Spanish and he knew only a few words in English.

In September 1999, the district attorney filed an information charging Robles with conspiracy to sell a controlled substance (Pen. Code, §182, subd. (a)(1); count 1), offering to sell and furnish a controlled substance (Health & Saf. Code, § 11379, subd. (a); count 2), and possession for sale of a controlled substance (Health & Saf. Code, § 11378; count 3).  The information

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

2

alleged for each count that the offense involved more than 10 kilograms of methamphetamine (Health & Saf. Code, § 11370.4, subd. (b)(3)[2]).  Robles faced 16-18 years in prison if convicted at trial.

In February 2000, Robles pled guilty to counts one and two, with a reduced enhancement for more than four kilograms of methamphetamine for both counts (Health & Saf. Code, § 11370.4, subd. (b)(2)).  The district attorney dismissed count three and stipulated to an eight-year sentence.

Robles completed and signed a plea form.  He initialed a box that stated, "I understand that if I am not a citizen of the United States a plea of Guilty or No Contest can or will result in removal or deportation, exclusion from admission to this country, and denial of naturalization."  He also initialed a box next to the statement, "I declare under penalty of perjury that I have read, understood, and initialed each item above and any attached addendum, and everything on the form and any attached addendum is true and correct."

Robles's attorney signed the plea form attesting that he "personally read and explained to the defendant the entire contents of this plea form," "discussed all charges and possible defenses with the defendant, and the consequences of this plea," and "personally observed the defendant . . . read and initial each item to acknowledge his/her understanding and waivers."

The form also included the signature of a sworn Spanish language interpreter verifying that she "truly translated for the defendant the entire contents of this form" and that Robles "indicated understanding of the contents of this form."

---

[2]    Section 11370.4 was amended effective January 1, 2024.  (See Stats. 2023, ch. 540, § 1, (Assem. Bill No. 701).)

Robles was also assisted by a Spanish speaking interpreter at the plea hearing. Robles testified that his initials and signature on the plea form were authentic, that he reviewed the form with his attorney, and that he was assisted by a Spanish speaking interpreter before initialing and signing the form. When the court asked if Robles had any questions about the contents of the form, Robles stated, "No."

The court asked, "Do you also understand if you are not now a citizen of the United States of America, your plea of guilty to counts one and two and the admission of the enhancements under count one and two, can result in the immediate removal from this country upon your release from custody, denial of admission into this country and the possible denial of naturalization. Sir, do you understand that?" Robles responded with an unequivocal, "Yes."

The prosecutor then clarified that, "In light of this plea and the structure of it, he *will be* determined an aggravated felon . . . which *would* barr [*sic*] him from the reentry into the states, status in the United States and *stripped* of his lawful permanent residence card and *will be forever excluded* are the expressed immigration consequences that *will take place* with this defendant . . . ." (Italics added.) The court asked, "Mr. Robles, do you understand what . . . the prosecutor, just indicated to you?" Again, Robles stated unequivocally, "Yes." The court immediately asked, "With that in mind, do you still wish to enter a plea of guilty to counts one and two and admit the enhancements under counts one and two?" Robles confirmed, "Yes."

When asked if he had any questions about anything the court said to him and whether there was anything he would like to ask his attorney, Robles stated, "No." He also confirmed that he did "thoroughly discuss" the

4

case with his attorney including "the consequences of [his] plea of guilty." The court then proceeded to take Robles's plea.

The court signed the plea form, indicating it had questioned Robles and his counsel and found that Robles understood "the nature of the charges and the consequences of the plea and admissions." In March 2000, the court sentenced Robles to the stipulated term of eight years in prison.

B.    *Robles's Motion to Withdraw His Plea*

After Robles completed his prison sentence, immigration agents detained him and he was deported to Mexico in 2003. He returned to the United States in 2004. In January 2023, almost 20 years later, Robles moved to vacate his convictions under sections 1473.7 and 1016.5. He claimed that he had recently consulted with an immigration attorney to legalize his immigration status. He learned that his application would be denied because of his convictions and that he could attempt to set aside his plea.

In his motion, Robles claimed he was an "unsophisticated man who did not understand the byzantine complexities of immigration law." He argued "there is no evidence [h]e received and understood the required immigration advisal in a manner he understood."

The only evidence Robles submitted in support of his motion was his own declaration. He asserted that his attorney told him that he had arranged a "good deal" and that he should plead guilty, which would result in a sentence of "a few years in prison." His attorney said the alternative was that he "could be sent to prison for many more years." Robles decided to plead guilty to resolve the case.

Robles declared that his attorney did not speak Spanish and he "believe[d] the attorney filled out a guilty plea form." He stated the attorney "spent a few moments going over the form" but he "did not understand much

5

about what was going on." He claimed he did not read the form because he did not read English. According to Robles, the issue of immigration status "never came up during my case" and he "d[id] not recall" his attorney asking about his immigration status. He declared that his attorney did not warn him that the convictions would guarantee his deportation for life.

Robles attested that he "believe[d] the judge went over the guilty plea form." However, he "d[id] not remember the details of what happened" and he "d[id] not remember the judge warning [him] that the guilty plea could subject [him] to deportation and other bad immigration consequences."

Finally, Robles declared that no one explained to him that by pleading guilty, he would be subject to "drastic immigration consequences including deportation, and inadmissibility" and he would not have pled guilty had he known this.

The People opposed Robles's motion, contending that he failed to meet his burden of proving by a preponderance of the evidence that an error had occurred. The People argued that Robles's declaration contradicted the record, referring to the plea form with Robles's initials indicating he read and understood the immigration consequences. Additionally, the People argued that Robles failed to demonstrate prejudice. Finally, the People argued the motion was untimely because the 20-year delay was unjustified.

At the hearing on Robles's motion, the court indicated that neither party had provided the court with a copy of the plea form. The People stated that it was attached to the motion and provided a copy to the court. The court's version of the motion did not have a copy of the plea form and defense counsel did not recall attaching it to his motion. The court indicated that it nonetheless would have wanted to review it. The court therefore had the

6

clerk make a copy of the People's version of the motion with the plea form attached, and took the matter under submission.

The court issued a written statement of decision finding that Robles's motion was timely and denying it on the merits because Robles did not meet his burden of proof. The plea form advised Robles that his plea "can <u>or</u> <u>will</u> result in removal or deportation, exclusion from admission to this country, and denial of naturalization. The court noted that "or will" was underlined on the form. All the boxes on the form were initialed by Robles and signed under penalty of perjury. The form was also signed with verifying statements from the defense counsel, deputy district attorney, Spanish interpreter, and judge. The court acknowledged that Robles claimed in his declaration that he did not understand what was going on, he did not remember his attorney discussing his immigration status, and he did not remember the judge warning him about the immigration consequences of his plea. However, "[u]nlike many published decisions addressing Section 1473.7, the exhibits submitted here [did] not include a declaration by defendant's trial attorney or other corroborating evidence . . . ." The court concluded that "[t]he plea documents make it clear that defendant understood that he was facing the possibility of mandatory deportation. Any representations by the Defendant to the contrary lack credibility."

DISCUSSION

A.    *Standard of Review*

We independently review on appeal a challenge to a criminal conviction for being legally invalid due to prejudicial error within the meaning of section 1473.7. (*People v. Espinoza* (2023) 14 Cal.5th 311, 316, 319 (*Espinoza*).) Under this standard, " ' "an appellate court exercises its independent

7

judgment to determine whether the facts satisfy the rule of law." ' " (*Id*. at pp. 319–320.)

"[F]actual determinations that are based on ' "the credibility of witnesses the [superior court] heard and observed" ' are entitled to particular deference, even though courts reviewing such claims generally may ' "reach a different conclusion [from the trial court] on an independent examination of the evidence . . . even where the evidence is conflicting." ' " (*People v. Vivar* (2021) 11 Cal.5th 510, 527 (*Vivar*).) In this case, however, the trial court decided the matter on the papers. " '[T]he trial court and this court are in the same position in interpreting written declarations' when reviewing a cold record in a section 1473.7 proceeding." (*Id*. at p. 528.) Accordingly, we will independently determine whether Robles is entitled to relief under section 1473.7.

B.      *Governing Legal Principles*

Section 1473.7 allows noncitizens no longer in criminal custody to petition to vacate a conviction if they can establish the conviction is " 'legally invalid due to prejudicial error damaging [their] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence.' " (§ 1473.7, subd. (a)(1); *Espinoza*, *supra*, 14 Cal.5th at p. 316.) The Legislature enacted section 1473.7 "to codify *Padilla v. Kentucky* [(2010) 559 U.S. 356] and related California case law and to encourage the growth of such case law in furtherance of justice[,]" recognizing that "[t]he immigration consequences of criminal convictions have a particularly strong impact in California." (§ 1016.2, subds. (g), (h); see Stats. 2018, ch. 825, § 1, subd. (c); see also *People v. Lopez* (2022) 83 Cal.App.5th 698, 703 (*Lopez*).) Interpreting section 1473.7, the Supreme Court has elaborated that "when long-standing

8

noncitizen residents of this country are accused of committing a crime, the most devastating consequence may not be a prison sentence, but their removal and exclusion from the United States." (*Vivar, supra,* 11 Cal.5th at p. 516.)

As the moving party, the petitioner in a section 1473.7 proceeding bears the burden of proof by a preponderance of the evidence. (§ 1473.7, subd. (e)(1); *Vivar, supra,* 11 Cal.5th at p. 517.) The petitioner must prove two elements. (*Espinoza, supra,* 14 Cal.5th at p. 319.) First, he must "show that he did not meaningfully understand the immigration consequences of his plea." (*Ibid.*) A defendant's own subjective error may provide a basis for relief. (*People v. Mejia* (2019) 36 Cal.App.5th 859, 866; see also *People v. Alatorre* (2021) 70 Cal.App.5th 747, 769.) "Next, the defendant must show that his misunderstanding constituted prejudicial error. '[P]rejudicial error . . . means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences.' " (*Espinoza, supra,* 14 Cal.5th at p. 319.)

A defendant seeking to withdraw his plea based on inadequate advisement of immigration consequences must "corroborate such assertions with ' "objective evidence." ' " (*Vivar, supra,* 11 Cal.5th at p. 530.) "Objective evidence includes facts provided by declaration, contemporaneous documentation of the defendant's immigration concerns or interactions with counsel, and evidence of the charges the defendant faced." (*Espinoza, supra,* 14 Cal.5th at p. 321.) "[N]o specific kind of evidence is a prerequisite for relief," but "[t]he more robust and inclusive a record, the greater the opportunity for effective persuasion and meaningful judicial review." (*Id.* at p. 325.)

C.   *Robles Failed to Meet His Burden of Establishing that He Did Not Meaningfully Understand the Immigration Consequences of His Felony Guilty Plea*

There is no dispute that as a result of his guilty plea, Robles was convicted of a serious controlled substance offense and aggravated felony, which made deportation mandatory and excluded him from admission to the United States.  (See *People v. Soto* (2022) 79 Cal.App.5th 602, 607 (*Soto*); *People v. Patterson* (2017) 2 Cal.5th 885, 895 (*Patterson*).)  Robles contends he was not sufficiently advised of these immigration consequences.  He cites his declaration as the only evidence supporting his claim that no one warned him of the immigration consequences of his guilty plea and asserts the district attorney provided no evidence to contradict his declaration.  Exercising our independent judgment, we conclude the trial court's ruling was correct.

As an initial matter, Robles argues the court relied on "phantom" documents that were not in the superior court record, referring to the discussion during the hearing on his motion indicating that the court did not initially have a copy of the plea form.  However, the reporter's transcript shows the court obtained and relied on a file-stamped copy of the plea form, which is also in the clerk's transcript on appeal and is file-stamped with the same date as the plea hearing, and accompanied by the clerk's certificate that the record is true and correct.  There is no genuine dispute that this is a true and accurate copy of Robles's plea form.  Accordingly, the plea form was part of the superior court record and is also part of the record on appeal.

Contrary to Robles's contention on appeal, the plea form directly contradicts his declaration that no one explained the immigration consequences of his plea.  Robles signed it and initialed boxes indicating that he understood that a guilty plea "can <u>or</u> <u>will</u> result in removal or deportation, exclusion from admission to this country, and denial of naturalization" and

10

that he read, initialed, and understood each item in the form.  While Robles declared that he did not read the plea form because he did not read English, a Spanish language interpreter signed the form attesting that she translated the form for Robles and that he indicated his understanding of its contents. His attorney also signed the form, confirming that he discussed the consequences of the plea with Robles including the immigration consequences, and that he personally observed Robles initial each item to acknowledge his understanding.  The trial judge also signed the form, stating that he questioned Robles and his counsel concerning the pleas and found that Robles understood the consequences.

We recognize, as Robles argues, that generic form statements and warnings on plea forms are not necessarily dispositive.  (See *Patterson*, *supra*, 2 Cal.5th at pp. 895–897; *Lopez*, *supra*, 83 Cal.App.5th at p. 716.)  "Even where the form says that the defendant 'will' be deported, it does not substitute for the advice of counsel, and it is not a categorical bar to relief." (*People v. Manzanilla* (2022) 80 Cal.App.5th 891, 906 (*Manzanilla*); see also *People v. Lopez* (2021) 66 Cal.App.5th 561, 578; *People v. Curiel* (2023) 92 Cal.App.5th 1160, 1175 (*Curiel*).)

But in those cases, other objective evidence—such as attorney notes, oral testimony, or affirmative actions taken by defendants after their convictions—substantiated the defendant's version of events.  (See *Manzanilla, supra,* 80 Cal.App.5th at p. 910 [rejecting claim that a defendant's initials and signature on a plea form conclusively showed he subjectively understood he would be deported and stating that this "has been rejected by numerous courts *where there is contemporaneous evidence to the contrary* . . . ."  (Emphasis added.)].)

11

In *Curiel*, for example, the Second District recently found corroborating evidence sufficient to overcome a defendant's signed acknowledgement that her plea would mandate deportation. (*Curiel, supra*, 92 Cal.App.5th at pp. 1177–1178.) There, the defendant had signed a plea form stating, "I understand that if I am not a citizen of the United States, I must expect my plea of guilty or no contest will result in my deportation . . . ." (*Id.* at p. 1165.) Curiel's section 1473.7 motion relied heavily on her own declaration to support her claim that she did not properly understand those immigration consequences. (*Id.* at p. 1167.) She alleged that she had relied on her defense counsel's representations that if she avoided jail time, she could avoid deportation. (*Ibid.*)

Critically, however, other objective evidence corroborated Curiel's account. (*Curiel, supra*, 92 Cal.App.5th at pp. 1177–1178.) The trial court held an evidentiary hearing on her petition, at which both Curiel and her original counsel testified. (*Id.* at pp. 1168–1171, 1176–1177.) On appeal, the court found that the testimony of Curiel's defense counsel "corroborated the statements in Curiel's declaration" and confirmed that the advice she received regarding the immigration consequences of her plea "was inadequate and incomplete." (*Id.* at p. 1177.)

Here, as the trial court noted, Robles put forth no evidence whatsoever to corroborate the claims in his declaration. He provided no declaration or testimony from his original defense counsel and no evidence that anyone even attempted to contact him to provide information or supply a supporting declaration. (Cf. *Espinoza, supra*, 14 Cal.5th at p. 325 ["Both the district attorney and Espinoza's counsel represented to the court that they tried, without success, to contact the attorney who represented Espinoza at the time his plea was entered"].)

12

Additionally, the record in this case contains more than just the warnings on the plea form. The reporter's transcript of the plea hearing also contradicts Robles's declaration that he was not advised of the immigration consequences of his plea. Robles acknowledged at the plea hearing that he initialed and signed the plea form after reviewing it with his attorney, that he was assisted by a Spanish interpreter, and that he had no questions about the contents of the form. He also confirmed that he understood the court's warning that his guilty plea could result in his removal and denial of admission into the United States and possible denial of naturalization. And after the prosecutor's clarification, he confirmed that he understood that because his plea would result in aggravated felony convictions, the "immigration consequences that *will* take place" were that he would be barred from reentry into the United States, "stripped of his lawful permanent residency card," and "forever excluded." (Emphasis added.)

Robles in his declaration admitted that he believed the court reviewed the plea form with him. While he declared that he "d[id] not remember" the court warning him of the immigration consequences, he concedes on appeal that the reporter's transcript of the plea hearing "does include an immigration consequences warning." His only response to this is that he "does not remember anyone warning him about the immigration consequences . . . apparently because [he] did not understand the Spanish translator." However, Robles did not claim in his declaration that he did not understand the translator at the plea hearing, nor is there any evidence to support such a conclusion. Moreover, his professed lack of memory of the immigration advisements given and translated into Spanish for him before and at the plea hearing does not establish that he did not meaningfully understand the immigration consequences at the time.

Based on our independent review of the record, Robles has not met his burden of establishing by a preponderance of the evidence that he did not "meaningfully understand" the immigration consequences of his guilty plea. (§ 1473.7, subd. (a)(1).) Because Robles failed to corroborate his assertions with objective evidence (*Vivar, supra*, 11 Cal.5th at p. 530), his declaration is inadequate to contradict the plea form and transcript of the plea hearing showing that he was advised of and acknowledged understanding of the immigration consequences. (See *People v. Abdelsalam* (2022) 73 Cal.App.5th 654, 664 [concluding, where the plea form and plea hearing transcript showed the defendant was fully advised of the immigration consequences of his plea, the defendant's declaration alone did not sufficiently establish that he did not meaningfully understand those consequences, stating "[t]he claim must be corroborated by evidence beyond the defendant's self-serving statements"].) Because the evidence is insufficient to establish that an error occurred, we need not address the prejudice prong of the section 1473.7 analysis.

D.    *The Section 1016.5 Advisement Satisfied the Statute*

Robles also briefly contends on appeal that the trial court did not address the advisement required under section 1016.5.

Section 1016.5, subdivision (a) requires the court to administer the following advisement on the record to the defendant:

> "If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."

Robles makes no effort to show that his convictions should have been vacated on the basis that the section 1016.5 advisement was not given. To the contrary, in arguing that a section 1016.5 advisal alone does not satisfy

14

section 1473.7, Robles appears to concede that the section 1016.5 advisal was given. He asserts that "a proper Penal Code section 1016.5 advisement . . . is not a bar to a section 1473.7 motion." He also argues that in this case "on the one hand you have . . . lifetime exile from the United States. And on the other hand you have an incidental, pro forma, and robotic Penal Code section 1016.5 advisal." Indeed, the advisement required under section 1016.5 was at the very least satisfied by the admonition on Robles's plea form that a guilty plea "can or will result in removal or deportation, exclusion from admission to this country, and denial of naturalization." (See *People v. Bravo* (2021) 69 Cal.App.5th 1063, 1072–1073 (*Bravo*)) [concluding the admonition on the defendant's plea form satisfied the advisement required under section 1016.5].)

We acknowledge that even though it complies with section 1016.5, an advisement that a plea "may have" specified immigration consequences is not adequate to satisfy section 1473.7 for defendants, like Robles, with serious controlled substance offenses. Such defendants "must be advised that they *will be* deported, excluded, and denied naturalization as a *mandatory* consequence of the conviction." (*Bravo*, *supra*, 69 Cal.App.5th at p. 1073, quoting *People v. Ruiz* (2020) 49 Cal.App.5th 1061, 1065 (*Ruiz*).) " 'A defendant entering a guilty plea may be aware that some criminal convictions may have immigration consequences as a general matter, and yet be unaware that a conviction for a specific charged offense will render the defendant subject to mandatory removal.' " (*Ruiz*, at p. 1065, quoting *Patterson*, *supra*, 2 Cal.5th at pp. 889, 895.) "And for many noncitizen defendants deciding whether to plead guilty, the 'actual risk' that the conviction will lead to deportation—as opposed to general awareness that a criminal conviction 'may' have adverse immigration consequences—will

undoubtedly be a 'material matter[ ]' that may factor heavily in the decision whether to plead guilty." (*Id.* at p. 896.)

But Robles did not argue below and does not argue on appeal that the advisements he received were deficient under section 1473.7 because of the precise language used on the plea form. Nor does he argue that the words "can <u>or</u> <u>will</u>" on the plea form were inadequate to advise him that he would be subject to mandatory removal—even with the added emphasis on "will." Regardless, as we have explained, Robles was in fact advised of the mandatory immigration consequences of his plea on the record at the plea hearing through a Spanish language interpreter, and he confirmed that he understood them and still wished to proceed with the plea. (Compare with *Soto*, *supra*, 79 Cal.App.5th at p. 609 [finding error under section 1473.7 where the plea form indicated only that there might be immigration consequences and there was no mention during the plea colloquy of immigration consequences].) Accordingly, we reject Robles's claims under both section 1016.5 and section 1473.7.

## DISPOSITION

The order is affirmed.

                                                        BUCHANAN, J.

WE CONCUR:

McCONNELL, P. J.

DO, J.